TISON & GORDON, plaintiffs in error, vs. P. J. HOWARD, defendant in error.

1. Bills of lading are symbolic of the property they represent, and though transferable so as to pass title to the property in a transaction intended to have that effect, are not, in the full commercial sense, negotiable paper, and are not attended with all the incidents of such paper in favor of *bona fide* purchasers.

2. In strict law, the proper person to pass a bill of lading by indorsement is the consignee, not the consignor : 1 Peters, 386.

3. Where a planter consigned cotton by railroad to a factor, taking therefor, from the carrier, an original and a duplicate receipt, both of them representing him as consignor and the factor as consignee, and indorsed both receipts in blank, forwarding the original, or causing it to be forwarded, by mail, to the factor, without any accompanying letter, and depositing the duplicate in the hands of his own banker for safe keeping, giving no authority to use or part with it ; and, thereupon, the banker, without his principal's knowledge or consent, indorsed the duplicate to the factor, and sent the same to the factor, assuming to control the cotton as if it were his own, when, in fact, he had made no purchase of it, and had no authority to sell it, without orders to do so ; and the factor, while in possession of the cotton, and of the duplicate receipt thus indorsed (by the planter, in blank, and by the banker to the factor,) and of letters of advice from the banker touching the shipment and giving instructions as owner, paid the banker's drafts to an amount exceeding the value of the cotton, looking to the cotton as security, and believing it to be the property of the banker, and having received from the planter no instructions whatever, and no notice of his title other than that implied in the fact, as shown by both receipts, of his being the consignor—the planter's title to the cotton was not lost or impaired ; and, although the banker became insolvent, the factor obtained no lien upon the cotton for his advances, and no right to withhold the proceeds from the planter, the true owner and his real principal in the consignment : 115 Mass., 224.

Factors. Negotiable instruments. Bills of lading. Indorsement. Before Judge HALL. Monroe Superior Court. March Term, 1876.

Howard filed his bill against Tison & Gordon and Lampkin & Company, to recover the value of certain cotton consigned to the former, and damages for the conversion of the same, making the case presented by the 3d head-note above. The jury found for the plaintiff. Tison & Gordon moved for a new trial upon the following, among other grounds :

1st. Because the court erred in charging the jury as follows: "That the fact that Lampkin & Company may have been indebted to Tison & Gordon at the time the cotton was shipped, and that Tison & Gordon may have appropriated the proceeds of the sale to the payment of such indebtedness, will not estop Howard from setting up claim, although, by his act, they may have been led to believe that the title was in Lampkin & Company."

2d. Because the court erred in charging the jury as follows: "If Lampkin & Company did not draw specially on the cotton in controversy, but drew generally, and defendants had cotton sufficient besides this to pay the drafts, then they could not charge up the drafts as advances on this cotton."

The motion was overruled and Tison & Gordon excepted.

BECK & BEEKS, for plaintiffs in error.

HAMMOND & BERNER; R. E. LESTER; CABANISS & TURNER, for defendant.

BLECKLEY, Judge.

Bills of lading are often mentioned in the books as negotiable instruments; and so they are, in a general sense, for they are symbolic of the property which they describe, and when there is a design to pass the property, that purpose may be accomplished by transferring the bills. But where the common law prevails and no statutes have been passed to better their standing, bills of lading do not enjoy the full dignity of negotiable paper, proper; that is, the mere possession of them in a state apparently regular, and under circumstances apparently innocent, does not always enable the holder to negotiate them with full protection to a *bona fide* purchaser. If they are stolen, or procured from the owner by fraud, or entrusted to an agent for mere custody and safe keeping, they occupy much the same, or perhaps exactly the same, position that the property itself would occupy if it were thus dealt with instead of the bills which represent it. That they are on a dif-

ferent footing from the negotiable paper of commerce, strictly so-called, is hardly questionable: Story on Bailments, sections 296, 323; Smith on Contracts, 446, note. The case before us is not a case of the actual sale of the bill by the bankers, the persons with whom it was deposited. The bankers did not even draw, in express terms, on the cotton mentioned in the bill of lading. Their drafts paid by the factors were drawn generally—not on this particular cotton. The bankers did not make any express pledge of the cotton or of the bill of lading. The lien claimed by the factors is for a general balance which is due them from the bankers. The owner, himself, was the consignor of the cotton, and this appeared on the face of the bill of lading. The factors were the consignees, and were thus the factors of the owner, as to this consignment. We do not think the cotton can be treated as lawfully sold, or as lawfully pledged by the bankers, or, that for any other reason found in the record, the factors can be excused from accounting to their consignor.

Judgment affirmed.