## RALEIGH & GASTON RAILROAD COMPANY *et al. v.*
## LOWE, for use, and *vice versa.*

1. While a bill of lading stipulating for the delivery of the goods therein described to the consignor's order is, in a general sense, "negotiable," it is not so within the meaning of this term as applied to bills of exchange, but is rather a symbol or representative of the goods themselves.

2. Consequently where such a bill of lading, without fault or negligence on the part of an agent of the owner to whom it had been sent, was stolen, the carrier would not, if it delivered the goods to the thief, upon his surrender of the bill of lading, be protected from liability to the owner as for a conversion, though the bill of lading was duly endorsed and the delivery was made in perfect good faith. The contrary would be true if the theft was due to the negligence of such agent; and whether or not such negligence existed should be determined by a jury, unless the evidence on this subject unequivocally demanded a finding one way or the other.

3. Where, however, the carrier did not deliver upon the faith of the bill of lading, but had, before it was stolen, already delivered to a person for whom it had reason to believe that the goods were ultimately intended, taking his check to indemnify itself against loss because of such unauthorized delivery, a bank which, as the owner's agent, was the lawful custodian of the bill of lading, but which had no knowledge of the facts above recited, was under no duty to the carrier of so guarding the possession of the instrument as to protect the latter from loss occasioned by surrendering the indemnifying check, in consequence of the production of the bill of lading by an unauthorized person who thus obtained payment for the goods from the party to whom they had been delivered and, as a result, induced the carrier to believe that the transaction was lawfully ended. It makes no difference that the unauthorized person above referred to was the party who was to be notified of the consignment and whose name appeared upon the bill of lading in this connection. Under such circumstances, negligence of the bank in losing possession of the bill of lading was not a matter of which the carrier had any legal right to complain, and upon the bank's reimbursing the consignor for the loss of the goods, an action in the latter's name, for the bank's use, was maintainable against the carrier.

4. In view of the undisputed facts disclosed by the record, it follows from the foregoing that the court committed no error in refusing to allow the defendant's special plea to be filed, or in ordering the same to be stricken, or in directing a verdict for the plaintiff.

Argued January 19, — Decided June 9, 1897.

Complaint. Before Judge Reid. City court of Atlanta. May term, 1896.

George F. Lowe, suing for the use of the Lowry Banking Company, brought his action against the Seaboard & Roanoke R. R. Co. and the Raleigh & Gaston R. R. Co., lessees of the

G., C. & N. Ry. Co., and against the G., C. & N. Ry. Co., alleging: On February 5, 1894, there was issued to him a bill of lading at LeRoy, New York, for 180 barrels of potatoes, by the New York, Lake Erie & Western R. R. Co., consigned to plaintiff's order, copy of which is attached. The goods called for by this bill of lading were transported from LeRoy, New York, to Elberton, Ga., having been received by the defendant companies from the last connecting carrier in the route from LeRoy to Elberton. On or about February 12, 1894, defendants unlawfully and without any authority delivered said goods to Gardner, Arnold & Co., at Elberton, and thereby converted the same to their own use. Plaintiff has made due demand upon defendants' for the goods, and they have refused and failed to deliver the same to him, although they duly received them for carriage to Elberton, to be delivered there to plaintiff upon the surrender of the bill of lading properly endorsed. On February 5, 1894, plaintiff attached a sight draft for $270, on Oscar E. Hudgins at Atlanta, Ga., payable to the order of plaintiff, to the bill of lading, and endorsed the draft for collection and remittance to himself, and sent the draft so endorsed and the bill of lading to the Lowry Banking Company of Atlanta, Ga., for collection. While the draft and bill of lading were in possession of the latter, the bill of lading was stolen from it by Hudgins, or some one else, and is lost or destroyed. Said banking company has paid $270 to said Lowe on account of these matters, and the bill of lading, with all of Lowe's rights thereunder, are its property. Because of the above stated facts defendants are indebted to plaintiff $270, the value of said goods, with interest.—It appears from the bill of lading attached that the goods were marked: "George F. Lowe, Elberton Ga. Notify O. E. Hudgins, Atlanta, Ga." Among the conditions of the bill of lading was the following: "If the word 'order' is written hereon immediately before or after the name of the party to whose order the property is consigned, without any condition or limitation other than the name of the party to be notified of the arrival of the property, the surrender of this bill of lading properly endorsed shall be required before the delivery of the

21

322 RALEIGH & GASTON RAILROAD CO. *v.* LOWE.  (101

property at destination. If any other than the aforesaid form of consignment is used herein, the said property may, at the option of the carrier, be delivered without requiring the production or surrender of this bill of lading." At the end of the bill of lading were the words, "not negotiable." The suit was brought June 19, 1894, to the July term of the city court of Atlanta. On July 2, 1894, defendants filed their plea of not indebted, and either denying, or stating that for want of sufficient information they could neither admit nor deny, the material allegations of the petition. On the trial in June, 1896, defendants offered the following amendments to their plea:

1. For further plea in this behalf defendants say, that Oscar E. Hudgins, a broker of the city of Atlanta, ordered from George F. Lowe, the plaintiff, 180 barrels of potatoes to be shipped to Gardner, Arnold & Co. at Elberton, Ga. Lowe shipped the potatoes on a bill of lading issued to him as alleged in the petition, and made a draft on Hudgins for the amount of the bill and attached the bill of lading, properly endorsed by him, to the draft. Lowe knew that said potatoes were ordered for account of Gardner, Arnold & Co. 176 barrels of said carload of potatoes were received by the lessees of the G., C. & N. Railway Co., at Elberton on February 12, 1894, and on the 14th of February were delivered to Gardner, Arnold & Co., upon their paying the freight and delivering to the agent of said lessees a check for $291.95, being the amount due to Lowe. Thereafter, on March 19, 1894, Hudgins delivered the bill of lading, properly endorsed by Lowe, to Gardner, Arnold & Co. for defendants, and Gardner, Arnold & Co. thereupon paid to Hudgins the amount due Lowe, and upon defendants being advised of this fact, the check of indemnity delivered to them as above alleged was surrendered to Gardner, Arnold & Co. The bill of lading was, by Gardner, Arnold & Co., delivered back to Hudgins for the purpose of making a claim for four barrels of potatoes which were not received by defendants, and said bill is still in the possession of said Hudgins so far as defendants are informed and believe. Wherefore they say that said bill of lading was duly sur-

rendered by the authorized agent of Lowe to Gardner, Arnold
& Co., who received the same on behalf and for the benefit of
defendants and whose act in so receiving the same has been
and is now ratified and confirmed.

2. Defendants received at Elberton, Ga., on February 12,
1894, 176 barrels of potatoes, being a part of the shipment de-
scribed in plaintiff's petition, and on February 14, 1894, they
delivered said potatoes so received to Gardner, Arnold & Co.,
of Elberton, Ga., for whose account they had been ordered by
Hudgins, as was well known to Lowe, the plaintiff; Gardner,
Arnold & Co. depositing with defendants their check for
$291.95, to indemnify defendants against loss if the potatoes
were held to be wrongfully delivered to Gardner, Arnold & Co.
Thereafter, on March 19, 1894, Oscar E. Hudgins, by consent
and authority of the Lowry Banking Company, for whose ben-
efit this suit is now proceeding, obtained possession of the bill
of lading referred to in plaintiff's petition, which had been
properly endorsed by Lowe, and tendered the same to Gardner,
Arnold & Co., and demanded a settlement of the amount due
for the potatoes received by them, and upon said tender Gard-
ner, Arnold & Co. did pay to Hudgins the amount due them
for said potatoes, and said bill of lading was surrendered and
delivered up to be canceled.

3. On February 12, 1894, 176 barrels of potatoes of the num-
ber alleged in the petition were received by defendants at El-
berton, Ga., and by them delivered to Gardner, Arnold & Co.,
for whom they had been ordered by Oscar E. Hudgins from
the plaintiff Lowe. Thereafter, on March 19, 1894, Hudgins,
having obtained possession of the bill of lading described in
plaintiff's petition, by the negligence of the Lowry Banking
Company who were then the agents of Lowe and who are now
the real parties at interest, and being so in possession of said bill
of lading which was properly endorsed, went to Elberton and
presented the same to Gardner, Arnold & Co., and demanded
of them a settlement for the purchase-money of said potatoes,
as the holder of said bill would have a right to do; and upon
the faith of said bill being properly in the hands of Hudgins,
Gardner, Arnold & Co. paid to Hudgins the full amount due

to Lowe on account of the purchase of said potatoes. When said potatoes were delivered to Gardner, Arnold & Co., they delivered to defendants a check to indemnify them against loss in the event that Gardner, Arnold & Co. were not entitled to receive said potatoes; and when Hudgins with said bill of lading in his possession demanded and had a settlement for account of Lowe with Gardner, Arnold & Co., defendants being apprised of these facts surrendered to Gardner, Arnold & Co. their said check of indemnity. Defendants aver that at said time they were amply protected by said check which was equivalent to the cash in their hands, and that by the conduct of said bank in allowing Hudgins to obtain possession of the bill of lading they were induced to part with this security, and are left with a right of action only, even if it exists, against Gardner, Arnold & Co., for indemnity. As the bank by its negligence allowed Hudgins to obtain possession of said bill of lading and thereby perpetrate a fraud upon Gardner, Arnold & Co., and collect from them the amount due to Lowe, said Lowry Banking Company have thereby released Gardner, Arnold & Co. from all liability to said bank on account of said potatoes; and as Gardner, Arnold & Co. were bound under the law as well as by their express agreement to indemnify defendants against the claim of the holder of said bill of lading, the release of Gardner, Arnold & Co. by the conduct of said bank destroys the right of action which defendants had against Gardner, Arnold & Co. for indemnity, and thereby operates in law as a release of these defendants from any claim of said bank on account of said bill of lading.

Plaintiff moved the court not to permit filed these amended pleas, on the following grounds: 1st. Said pleas are filed too late, do not claim that the defendants did not have notice or knowledge of the defense thereby made when their original pleas were filed, nor is any affidavit thereof attached as required by statute. 2d. Said pleas and each of them fail to set out any valid defense to the petition and case made by plaintiff, in that those of the two pleas, attempting to set up an agency on the part of Hudgins for Lowe and for the Lowry Banking Company, fail to show any such agency or authority

on his part as would enable him to bind the Lowry Banking Company or Lowe by his wrongful acts as set out; and they are also inconsistent with the prior pleas filed by defendants in this case; and the plea setting out negligence of the bank in permitting Hudgins to get the bill of lading, and his subsequently surrendering it to the road, is insufficient in law to constitute any defense against the claims of plaintiff; no duty was owing by the bank or Lowe to the road in this regard, and the alleged negligence constitutes no defense.

The court allowed filed the first and second pleas, and refused to allow filed the third plea. To the latter ruling defendants excepted. By cross-bill of exceptions the plaintiff assigned error upon the ruling allowing first two pleas.

At the close of plaintiff's evidence a nonsuit was entered as to the G., C. & N. Ry. Co. There was a verdict in favor of plaintiff for $270 principal, with costs. Defendants moved for a new trial; the motion was overruled, and they excepted. The motion was upon the grounds that the verdict was contrary to law and evidence. Further, because the court erred in directing the jury to find a verdict in favor of plaintiff. Counsel for defendants having stated in his argument that he relied upon the plea contained in the record, designated as amended plea No. 1, which alleged that Hudgins was the authorized agent of Lowe, plaintiff, and that if the evidence did not authorize a verdict in favor of the defendants on this plea, the plaintiff was entitled to recover, the court held that there was not sufficient evidence to authorize a verdict on this plea, and directed the jury to return a verdict in favor of the plaintiff for the amount sued for.

The evidence in favor of the plaintiff was, in brief, as follows: Letter from plaintiff to the Lowry Banking Company, dated February 20, 1894, enclosing draft for $270, dated LeRoy, New York, February 5, 1894, signed by George F. Lowe and payable at sight to the order of George F. Lowe, and endorsed by him for collection and remittance, and addressed to Oscar E. Hudgins, Atlanta, Ga., which sight draft was attached to the bill of lading in question; the letter, being addressed to the Lowry Banking Company, came to the Lowry Banking

Company by due course of mail.   In this letter it was stated, among other things: "Do not surrender bills of lading until drafts are paid."  . Other drafts on Hudgins were enclosed in the same letter.   Some of these other drafts were paid by Hudgins, but the draft in question was not.   It was the custom of the Lowry Banking Company to allow the bills of lading attached to drafts to be examined by the drawee, to see the road over which the freight came, the routing of the goods, etc.   Such examination was allowed in the office of the bank. Hudgins came to the bank and asked the collection clerk, in whose possession were the bills of lading and drafts, to let him see them.   The clerk handed them outside through the window, and Hudgins commenced to examine them.   The clerk turned around with his back to Hudgins, having no reason to suspect any dishonesty on the part of Hudgins prior to that time.   It was discovered some two weeks after the date when the bill of lading and draft were received that Hudgins had taken this and other bills of lading and substituted canceled bills of lading in their place.   The bank made every possible effort to find Hudgins, but has never been able to find where he is.   It was the custom with the banks of Atlanta generally to allow such examination of papers.   Of the bills of lading drawn on Hudgins only four were stolen and others substituted in their places.   (It is stated in the oral evidence that the bill of lading in question was drawn to the shipper's order, and that none of the bills of lading were issued to Hudgins.)   There had been other dealings between Lowe and Hudgins through the bank, in the course of which other drafts with bills of lading attached had been drawn, and paid by Hudgins.   No authority was given to Hudgins or any one to take the bill of lading in question or the others which were stolen.   Hudgins was a broker. Before the transaction in question, when Hudgins would call at the bank to examine bills of lading and they were handed to him through the window, he would go through them, and when he got through, would always hand them back.   The bank settled with Lowe for the bill of lading in question, and he assigned his rights to the bank.   Lowe never authorized any one to receive the potatoes for him, except by authorizing the

bank to deliver up the bill of lading when the draft was paid. Lowe never received the potatoes or any of them. The Lowry Banking Company paid Lowe $270 when he transferred his rights to it, and the potatoes were worth this amount. The car of potatoes in question was received by defendant February 10, 1894, at Sandford, North Carolina, and transported to Elberton, Ga., arriving there on February 12, 1894. In looking through Hudgins' desk after he had absconded, the vice-president of the bank found a number of invoices or shipments made by Lowe, which were referred to in the letter of Lowe to the bank enclosing the draft and bills of lading, among them the invoice for the car in question. The invoices were made out : Oscar E. Hudgins bought of George F. Lowe; that is, in favor of Lowe as creditor and Hudgins as debtor. If the original bill of lading was endorsed before it left LeRoy, Lowe endorsed it.

For the defendants the evidence was to the following effect: Wester was agent at Elberton for the defendants at the time in question. He delivered the potatoes to Gardner, Arnold & Co., there being four barrels short, on February 13th. At that time said firm showed him an invoice; they did not have the bill of lading, but gave to Wester a check to hold for indemnity against the goods, covering the amount of the invoice. On the 19th of March Hudgins came on the train through Elberton. The train stopped at Elberton several minutes. He had previously notified Gardner, Arnold & Co. that he would pass through Elberton that night, and to bring certified check or New York exchange to the train for the amount of the potatoes and he would hand them bill of lading. At the train Hudgins was introduced to Wester by Gardner, Arnold & Company's representative, who asked Wester to verify the statement to Hudgins that said representative had paid the freight on the bill, which Wester did. Wester saw a bill of lading in the hands of Craig, Gardner Arnold & Company's representative, but did not examine it closely ; doesn't know really whether it was the bill of lading which called for the potatoes, and never saw it any more after that night. After the settlement made that night between Gardner, Arnold & Co. and Hudgins, a day

or two afterwards Wester returned to Gardner, Arnold & Co. the check which they had given him.   Wester didn't know whether Hudgins bought those potatoes or was acting as the agent of Lowe.   Gardner, Arnold & Co. received the invoice from Hudgins February 10, 1894.   Craig saw the bill of lading on the evening of March 19, 1894, at the depot in Elberton in the hands of Hudgins.   He testified that it was issued by the N. Y., L. E. & W. R. R. Co., February 5 or 6, 1894, for 180 barrels of potatoes shipped to the order of George F. Lowe, Elberton, Ga., notify Oscar E. Hudgins, Atlanta, Ga., and was endorsed by Lowe and Hudgins; that he examined it closely; that he went to the depot with check for the potatoes and paid Hudgins for them; that he received the bill of lading from Hudgins after giving Hudgins the check, and at the same time Wester came up, whom he introduced to Hudgins, explaining to Wester that Hudgins was the man from whom G., A. & Co. had bought the potatoes, and at the same time showed Wester the bill of lading and got Wester to certify to the shortage (of four barrels); that Hudgins then asked him, Craig, to let him have the bill of lading back in order to make claim for the shortage, Hudgins promising to return the bill of lading to G., A. & Co. in a few days; that Hudgins then took the train and left, and Craig has not seen the bill of lading since; that the bill of lading was not delivered to Wester directly, but was handed to Hudgins in Wester's presence, Wester knowing of such delivery and consenting thereto; that he did not know that the bill of lading was the original bill of lading, but Hudgins delivered it to him as such, and the number of barrels, date, etc., corresponded with the invoice, and it had proper endorsements on the back; that there were no conditions attached to the endorsement; that Lowe's signature was on the back of the bill of lading, but Craig did not know that it was genuine, did not know that Lowe endorsed it, and did not know the handwriting of any of the endorsers; that Wester could have examined the bill of lading if he had so desired and could have kept it, but did not, because Hudgins desired it to make claim for his shortage and promised to return it in a day or two.

*Erwin & Woolley*, for the railroad companies.

*King & Anderson*, contra.

FISH, J.    1. The law is well settled, that while a bill of lading stipulating for the delivery of the goods therein described to the consignor's order is, in a general sense, "negotiable," it is not so within the meaning of the term as applied to bills of exchange, but is rather a symbol or representative of the goods themselves.    Except where the rules of the common law and mercantile usage have been modified by statute, the transfer of a bill of lading by endorsement and delivery passes to the endorsee only such rights to, or property in, the goods covered by the bill as the transferrer himself has and as it is the intention of the parties shall be conveyed.    The rule that possession carries evidence of title so as to protect bona fide purchasers in the usual course of trade is, in the absence of a statute to the contrary, limited to negotiable paper, such as bills of exchange and promissory notes, and to money, bank-bills, or other recognized currency, and does not apply to bills of lading, which answer a different purpose and perform different functions.    They are not the representatives of money, are not used for transmission of money, nor for the payment of debts, nor for purchases.    They are regarded as so much cotton, grain, iron or other articles of merchandise, in that they are symbols of ownership of the property mentioned in them, and a transfer of the symbol does not operate more than a transfer of what it represents.    Gurney *v.* Behrend, 3 El. & Bl. 633; Stallenwork *v.* Thacher, 115 Mass. 224; *Tison* v. *Howard,* 57 *Ga.* 410; *Planters' Rice Mill Co.* v. *Merchants' Nat. Bank,* 78 *Ga.* 574; *Haas* v. *Railroad Co.,* 81 *Ga.* 792; Shaw *v.* Railroad Co., 101 U. S. 557; Pollard *v.* Vinton, 105 U. S. 8; Friedlander *v.* Railway Co., 130 U. S. 424.

2, 3. As no sale of stolen goods, though to a bona fide purchaser for value, can divest the ownership of the person from whom they were stolen, it follows that the sale of a stolen bill of lading, the symbol or mere representative of the goods it covers, can confer no title upon an innocent third person as against the owner, or those claiming under him.    See authorities cited supra.    Upon the same principle, if a carrier deliv-

ers the goods upon a stolen bill of lading, it will not be protected from liability to the owner as for a conversion, though the bill be endorsed in blank and the delivery made in perfect good faith.   If, however, a bill of lading, duly endorsed, is stolen by reason of the negligence or carelessness of the owner or his agent, the carrier in good faith delivering upon such bill of lading is not guilty of a conversion.   See 130 U. S. 424; 101 U. S. 565; 91 U. S. 618; 65 Fed. Rep. 848; 3 El. & Bl. 635, and 4 Am. & Eng. Enc. L. (2d ed.) p. 551, where this doctrine is recognized.   In such case the familiar principle would be applicable, that where one of two innocent parties must suffer by the fraud of another, the loss should fall upon him who enabled such third person to commit the fraud.   Whether such negligence existed in a given case, of course, should be determined by a jury, unless the evidence on this subject unequivocally demanded a finding one way or the other.   The defendants below, however, did not deliver the goods upon a presentation of the stolen bill of lading, but had, probably a month before it was stolen by Hudgins from the Lowry Banking Co., agent of Lowe, consignor, delivered them to Gardner, Arnold & Co., for whom there was reason to believe they were ultimately intended; thus making both the defendants and Gardner, Arnold & Co. guilty of a conversion and giving Lowe a right of action against either of them.   Realizing their liability, the defendants endeavored to protect themselves by taking from Gardner, Arnold & Co. an indemnifying check against loss by reason of such unauthorized delivery.   Subsequently, when Gardner, Arnold & Co. procured the stolen bill of lading from Hudgins, by paying him for the goods—believing he was the rightful owner—and exhibited it to the defendants, they, thinking the transaction was lawfully ended, surrendered to Gardner, Arnold & Co. the indemnifying check.   Under such circumstances, the Lowry Banking Co., which had no knowledge whatever of the facts above recited, was under no duty to the defendants to so guard the possession of the bill of lading as to protect the latter from loss occasioned by their return of the check upon the production of the stolen bill.   Negligence of the bank in losing pos-

session of the bill of lading was not a matter of which the defendants had any legal right to complain. When the defendants converted Lowe's goods and arranged a scheme for their own protection, they did so at their peril, and neither Lowe, nor his agent, the bank, each of whom was without notice of the conversion or scheme, was bound to do anything to prevent the miscarriage of defendants' plans for indemnity. The fact that Hudgins was the party to be notified of the consignment and whose name appeared upon the bill of lading, in this connection, does not alter the rule. The very presence of the words, "notify Hudgins, Atlanta, Ga.," in the bill of lading, shows that Hudgins was not intended as the consignee. If he had been, then such words were wholly unnecessary, as it is the duty of the carrier to notify the consignee of the arrival of the goods without being requested or instructed to do so. Hutchinson on Carriers, 2d ed., § 131 (b), and cases cited. When the Lowry Banking Co. reimbursed Lowe for the loss of the goods, an action, in the latter's name for the former's use, was maintainable against the defendants.

4. In view of the undisputed facts disclosed by the record, it follows, from the foregoing, that the court committed no error in refusing to allow the defendants' special plea to be filed, or in ordering the same to be stricken, or in directing a verdict for the plaintiff.

*Judgment affirmed; cross-bill of exceptions dismissed. All the Justices concurring, except Cobb, J., disqualified.*