### COMMERCIAL BANK v. ARMSBY COMPANY.

Where a merchant ships goods to his broker, without conveying title to him but purely for the purpose of distribution to others, and sends to the broker a bill of lading, indorsed in blank, for the goods the possession of which, by the general custom of trade, is regarded as evidence of the right to dispose of the property for which it is issued, he can not, in an action of trover, recover the goods from a bank which has, in good faith and without notice of the owner's title, taken the bill of lading as security for a loan of money to the broker on his individual account, and converted the property upon default in the payment of its debt.

Argued April 4, — Decided May 13, 1904.

Trover. Before Judge Eve. City court of Richmond county. June 13, 1903.

*William H. Fleming,* for plaintiff in error.
*Joseph B. & Bryan Cumming,* contra.

CANDLER, J.  The J. K. Armsby Company, an Illinois corporation, shipped to Walton & Carr, their brokers, in Augusta, a quantity of salmon for distribution to different parties to whom the goods had been sold.  Walton & Carr were merely agents of the Armsby Company, and had no right or title to the salmon.  The goods were shipped from a point in Oregon, by parties from whom they had been ordered by the Armsby Company, on a through bill of lading to Augusta, and were consigned to the order of the consignor, with directions to notify Walton & Carr.  The Armsby Company sent Walton & Carr a check for the amount of the freight, which was paid, and it also mailed them the original bill of lading, which was indorsed in blank.  Carr, a member of the firm of Walton & Carr, took the bill of lading to the Commercial Bank of Augusta, and hypothecated it for a loan of money.  Shortly thereafter Walton & Carr failed, and the bank converted the salmon for the payment of its debt; whereupon the Armsby Company brought against it the present suit, which was an action of trover.  The case was tried before the judge of the city court of Richmond county, without a jury.  The bank showed that it was the general custom of trade in Augusta that bills of lading "to order notify" were attached to drafts for the purchase-price of the good represented by them; that possession of the bill of lading could only be obtained by payment of the draft; that possession of such a bill of lading was considered prima facie evidence of ownership of the property for which it was issued; and that it was treated by banks as negotiable paper.  It was also shown that the J. K. Armsby Company had done business in Augusta for a number of years; and that while Walton & Carr were merchandise brokers they also bought and sold goods on their own account.  It was admitted that neither the bank nor any of its officials knew or had reason to suspect that Carr had no right to convey the salmon; and that in the event the bank should be held liable, the proper amount to be recovered was $700.  The judge found in favor of the plaintiff, and rendered judgment in its favor for the amount mentioned.  The defendant excepted.

"Where an owner has given to another such evidence of the right of selling his goods, as, according to the custom of trade or the common understanding of the world, usually accompanies the authority of disposal, or has given the external indicia of the right

of disposing of his property, a sale to an innocent purchaser divests the true owner's title." Civil Code, § 3539. The sole question for our determination, then, is, does a bill of lading of the character of the one involved in this suit constitute such an external indicium of the right of disposing of the property for which it was issued as to bring the case within the operation of the rule laid down in the code section cited? As a general rule, the transferee of a bill of lading can obtain no better title to the goods which it covers than that which was in the person by whom it was transferred. Indeed, it is a self-evident proposition that no man can convey that which he does not possess. But the true owner of property may, by placing it in the power of another to defraud innocent purchasers by an apparently valid transfer of the property, cut himself off from claiming it, and thereby divest the title from himself. In 4 Am. & Eng. Enc. L. (2d ed.) 551, it is said that an important exception to the general rule which has already been stated "arises in the case of the transfer of a bill of lading to a bona fide purchaser for value by a consignee to whom the goods are, by the terms of the instrument, made deliverable, or to whom the consignor and original owner of the goods has endorsed and delivered the bill. It seems to be established that in this case the transfer defeats the vendor's right of stoppage in transitu, and passes the title to the goods to the bona fide transferee." See also 6 Cyc. 424; 1 Mechem on Sales, § 166; Pollard. *v.* Reordan, 65 Fed. 848. While a bill of lading is not in the full sense a negotiable instrument, it is treated by universal commercial usage as a symbol of the goods for which it is issued; and consequently it is in a measure negotiable. In Georgia, it may be pledged as security for debt (Civil Code, § 2956), and a bona fide assignee for value is protected in his title against the owner's right of stoppage in transitu (Civil Code, § 3553). In *American Nat. Bank* v. *Georgia R. Co.*, 96 *Ga.* 665, the status of bills of lading under our law is discussed with considerable fullness; and while the decision in that case is not directly in point on the question involved in the case at bar, the reasoning of Mr. Chief Justice Simmons has an important bearing thereon. The following language from the opinion of Mr. Justice Miller in the case of McNeal *v.* Hill, Woolw. (U. S. C. C.) 96, is there quoted with approval: "As civilization has advanced and commerce extended, new and

artificial modes of doing business have superseded the exchanges by barter and otherwise which prevail while society is in its earlier and simpler stages.    The invention of the bill of exchange is a familiar illustration of this fact.    A more modern, but still not recent invention of like character, for the transfer, without the cumbersome and often impossible operations of actual delivery of articles of personal property, is the endorsement or assignment of bills of lading and warehouse receipts.    Instruments of this kind are sui generis.    From long use and trade they have come to have among commercial men a well-understood meaning, and the endorsement or assignment of them as absolutely transfers the general property of the goods and chattels therein named as would a bill of sale."

In this case there was no dispute as to the general custom of trade in regard to bills of lading of the character of the one negotiated by Carr with the Commercial Bank.    It was the daily practice of banks in Augusta and elsewhere to advance money on such security, for possession of the bill of lading was regarded as prima facie evidence of the title of the holder to the goods of which the bill was the symbol.    Ordinarily bills of lading of this kind are attached to drafts for the purchase-price of the goods, and can only be obtained by payment of the draft.    Carr's possession of the bill of lading was, therefore, prima facie evidence that he had paid a draft drawn by the consignor and was entitled to the property.    The departure of the Armsby Company from this custom placed it in the power of Carr to commit a fraud on the bank — an opportunity of which he seems to have promptly availed himself.    Applying the well-known rule that where one of two innocent persons must suffer from the wrong of another the burden should be borne by him who placed it in the power of the wrongdoer to perpetrate the fraud, we fail to see how it can be held that the plaintiff can recover.    The Georgia cases cited by counsel for the defendant in error do not, in our opinion, conflict with what is here laid down.    The case of *Tison* v. *Howard*, 57 *Ga.* 410, which is more nearly in point than any of the other cases cited, is easily distinguishable from the case at bar.    There the owner of the goods received from the transportation company duplicate bills of lading, both of which he endorsed in blank, sending the original to his factor and depositing the duplicate in a bank for

safe keeping and for no other purpose. The bailee bank endorsed the duplicate bill of lading and secured from the factor an amount of money in excess of the value of the goods. The court held, in effect, that a bill of lading is not, in the full sense, a negotiable instrument; and that, the deposit of the bill with the bank being purely a bailment for safe keeping, the virtual theft of it by the banker did not deprive the true owner of the goods of his title. In the case now under consideration no such state of facts is made to appear. The Armsby Company forwarded to Walton & Carr a bill of lading the possession of which, under the universal custom of business, gave a prima facie right to the disposal of the goods for which it was issued. The purpose for which the instrument was confided to Walton & Carr does not definitely appear from the record; but there is nothing to indicate that it was merely entrusted to them for safe keeping. There was nothing to put the bank on notice that title to the property was in any one other than the holder of the bill of lading. A fraud was committed by Carr, by means of which he obtained from the bank a large sum of money. To say nothing of the provisions of the Civil Code, § 3539, the plainest principles of equity require that the Armsby Company, which made the commission of the fraud possible, and not the bank, should bear the loss.

*Judgment reversed. All the Justices concur, except Lamar, J., disqualified.*