## 13084.　STANTON *et al. v.* WASHINGTON LOAN AND BANKING COMPANY.

1. One who purchases a note after its maturity from a person who has no title to it acquires no title as against the true owner.
2. Under the foregoing ruling and the agreed facts of this case, the court erred in directing a verdict for the plaintiff.

DECIDED MARCH 7, 1922.

Complaint; from Wilkes superior court — Judge Shurley. November 8, 1921.

*W. A. Slaton,* for plaintiff in error. *Colley & Colley,* contra.

BROYLES, C. J. This is a suit against the maker and the indorser of a promissory note. The maker filed no defense, but the indorser answered, denying liability, on the ground that the plaintiff had no title to the note sued upon. When the case came on for trial, and after a jury had been duly impaneled to try it, counsel for both parties agreed to submit the case upon the following agreed statement of facts: "The note sued on, a copy of which is attached to plaintiff's petition, was executed and delivered by the maker, G. T. Anthony, to the payee, P. A. Stanton. Before the note became due it was indorsed in blank by P. A. Stanton, the payee, and delivered to the Bank of Social Circle.

for the purpose of being collected, who sent it to the Washington Exchange Bank, at Washington, Ga. After the note became due the Washington Exchange Bank returned the note to the Bank of Social Circle, who returned it to P. A. Stanton. The note, then being past due, was delivered by P. A. Stanton to his brother, T. D. Stanton, as his agent, with the authority to collect the note, but with no other authority. The note was still indorsed in blank by P. A. Stanton, and on May 25, 1920, T. D. Stanton, having possession of the note, took a new note from G. T. Anthony, payable to himself, in the face of which was written the following words: 'The retainer-title note to said tractor is hereto attached and held in trust by said T. D. Stanton as collateral security.' Both the note sued on, then past due, and the new note were then taken by T. D. Stanton to the Washington Loan & Banking Company, and, being pinned together, were delivered to the Washington Loan & Banking Company, which [bank] paid T. D. Stanton $1290.00 therefor. A. P. Stanton received no part of the proceeds of the note or notes, and did not know of the delivery of the note to the Washington Loan & Banking Company until payment was demanded of him before this suit was filed. T. D. Stanton had no title to the note payable to P. A. Stanton, and indorsed by him, and had no authority with reference to it from P. A. Stanton, except to collect it. T. D. Stanton indorsed the note payable to himself, but did not indorse that payable to P. A. Stanton. The Washington Loan & Banking Company took the notes and parted with their money on the faith of the indorsement of P. A. Stanton." The court, after hearing argument of counsel, directed a verdict in favor of the plaintiff for the full amount sued for, and to this ruling the defendant, P. A. Stanton, excepts.

We think that the court erred in directing a verdict for the plaintiff. The agreed statement of facts, considered in the light of the settled law of this State, shows, beyond question, that the plaintiff had no title to the note sued upon. The plaintiff received the note after maturity and from one who had no title to it. Section 4118 of the Civil Code (1910) is as follows: " The seller can convey no greater title than he has himself. The bona fide purchaser of a negotiable paper *not dishonored,* or of money, or bank bills, or other recognized currency, will be protected in his title, though the seller had none. There is no 'market overt'

in Georgia." (Italics ours.) The use of the words "not dishonored," in the code section, clearly limits their application to negotiable papers purchased *before maturity*. This section shows also that the law is the same now as it was when the decision in the case of *Thomas* v. *Kinsey*, 8 *Ga.* 421, was rendered. The fifth headnote of that decision is as follows: " One who buys a note, bill or other negotiable security *bona fide,* and for value, *after it is due,* from one who has no title to it, acquires no title against the true owner." And the court in that case, speaking through Judge Nisbet, said: " The general rule of law of this State and of Great Britain is, that no man can acquire a title to a chattel personal from any one who has himself no title to it. A contrary rule would subvert the foundations upon which property rests, violate natural justice, and make the law the agent for outraging the first principles of morality. If property found or stolen, or obtained by violence or fraud, could be sold, and the title in the purchaser be maintained against the real owner, then would the law pander to injustice and patronise immorality. However innocent the purchaser under such circumstances may be, and however great his loss may be, and although he is in fact the victim of villainy, his title is subordinate to the title of the true owner. He gets the title of his vendor and no more, which must yield to the title of the owner whenever that is established. This rule is of general application, and embraces all kinds of personal property — applying, generally, to notes, bill and other negotiable securities, as well as to negroes, stocks or horses. To this general rule there are a few exceptions. By the common law, property sold in market overt [there is no market overt in Georgia] is not embraced in it; and by the common law, and by the judgment of this court, negotiable instruments, transferable by delivery, and *when not yet due,* are an exception. The law touching this last-named exception was maturely considered in *Matthews* v. *Poythress*, 4 *Ga.* 287. . . What is especially necessary to note is, the general rule, embracing within its wide range, bills, notes and other negotiable securities, as well as all chattels, and the exception, which embraces in its restrictive scope negotiable securities which are transferred before they fall due. . . The true ground upon which the exception rests is commercial expediency. It is to promote the ready circulation, and to extend the credit of negoti-

able paper, and in so doing subserve the great interests of commerce. The exigencies of commerce require that they should become practically and equivalent to, and representative of money. . . Does this exception extend to notes, bills and other securities *past due ?* It does not."

The well-settled principle, that where one of two innocent persons must suffer loss by the fraud of a third person, the loss must fall upon him whose credulity, or negligence, or misplaced confidence, put it in the power of such third person to perpetrate the fraud (Civil Code of 1910, § 4537), does not apply to negotiable instruments purchased or otherwise received *after maturity.* The law presumes *as to a past due paper* that there is some good reason why it was not paid. Such a paper goes into circulation dishonored — branded with a protest; and a purchaser takes it at his own risk.

It follows, from what has been said, that the court erred in directing a verdict for the plaintiff.

*Judgment reversed. Luke and Bloodworth, JJ., concur.*