BANK OF OGLETHORPE *v.* SWINDLE, administrator, *et al.*

1. "One who buys a note, bill, or other negotiable security bona fide, and for value, after it is due, from one who has no title to it, acquires no title against the true owner."
2. Civil Code, § 4537, which declares: "When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss," has no application to the facts of this case.

No. 3210.   FEBRUARY 15, 1923.

Equitable petition. Before Judge R. C. Bell. Mitchell superior court. April 18, 1922.

On May 1, 1915, Mitchell County Bank issued to Mrs. Fannie Pearce a certificate of deposit for $2500. To secure its payment the bank turned over and delivered to her two negotiable promissory notes made by E. E. Cox and A. H. Jones, each for $1685. Mrs. Pearce left the notes with the bank, for the purpose of renewal, taking a trust receipt therefor from the bank. On July 15, 1915, the bank procured on behalf of Mrs. Pearce renewal of the notes, the new notes being made payable October 15, and held by the bank as depositary under the trust receipt given to Mrs. Pearce. On October 11, 1915, Mitchell County Bank deposited the notes last mentioned with the Bank of Hillsboro, to secure a certificate of deposit made by Mitchell County Bank to Bank of Hillsboro. On Oct. 12, 1915, the Bank of Hillsboro forwarded both notes to Mitchell County Bank for collection under a trust receipt. Subsequently, and after maturity, Mitchell County Bank pledged one of the notes with Bank of Oglethorpe to secure an indebtedness. On the back of each note appears the following indorsements: " Mitchell County Bank, J. E. Brooks, Cashier." " Mitchell County Bank, C. Bradford, Cashier." The issue between the Bank of Hillsboro and the Bank of Oglethorpe as to which of these two banks had title to the note in dispute was, by agreement, separately submitted to the court, and the court directed a verdict in favor of the Bank of Hillsboro and against the Bank of Oglethorpe. Bank of Oglethorpe made a motion for new trial, which was overruled, and it excepted.

*Greene F. Johnson,* for plaintiff in error.

*Gardner & Gardner, E. E. Cox,* and *E. M. Davis,* contra.

GILBERT, J. 1. The sole question is whether Bank of Oglethorpe, the purchaser of the note after it was due, from the Bank of Mitchell County, acquired title good as against the Bank of Hillsboro. If the verdict here complained of was properly directed, it necessarily follows that the Bank of Oglethorpe has no further interest in the adjudications of the case, as between the other parties. There is no dispute as to the facts. The note, when first received by the Bank of Hillsboro, was indorsed in blank. The Bank of Hillsboro returned it to Mitchell County Bank for collection, under a trust agreement evidenced by a separate writing. The Bank of Hillsboro, in returning the note for collection, made no entry of any kind or character on the note itself. The name of

the Bank of Hillsboro does not appear on the note. Precisely in this condition, Mitchell County Bank, after the maturity of the note, pledged it as collateral to Bank of Oglethorpe. Bank of Oglethorpe, *after maturity* of the note, therefore, accepted it as collateral security from a bank which had no title, but held it for collection only under a trust agreement. The decisions of the American and English courts, touching the rights of one who acquires a negotiable note bona fide and for value after maturity, show lack of uniformity in the principles stated. This is partly accounted for by the explanation that the facts vary more or less. Sometimes the difference is noticeable only by very close inspection. It would accomplish nothing to attempt a reconciliation of the views expressed; for the outside decisions are not binding in this State, and are so numerous that the discussion would be tiresome, without corresponding profit. This case is presented to us by able counsel with the utmost fairness. Our attention is directed by counsel for plaintiff in error to the cases of *Thomas* v. *Kinsey,* 8 *Ga.* 421 (5), and *Stanton* v. *Washington Loan & Banking Co.,* 28 *Ga. App.* 319 (110 S. E. 918), with the admission that these cases are apparently in conflict with his contention; and he invokes the judgment of this court as to whether or not they are controlling in the case. The facts are quite similar, and the principles of law applied in the two cases just mentioned are applicable in the present case and require an affirmance by this court of the judgment rendered by the trial court. Whatever may be the force of observations made elsewhere, in this State the rights of a purchaser of a negotiable instrument after maturity have been made to turn upon the question of title of the person from whom such note was acquired. This rule appears to furnish the best basis yet proposed for harmonizing the apparently inharmonious decisions on the question. Two cases decided by the Supreme Court of Illinois differed in that respect, the result being controlled by the question of title or no title in the person from whom the paper was acquired. Y. M. C. A. Gymnasium Co. *v.* Rockford National Bank, 179 Ill. 599 (54 N. E. 297, 46 L. R. A. 753, 70 Am. St. R. 135) ; Hide & Leather National Bank *v.* Alexander, 184 Ill. 416 (56 N. E. 809). For a discussion of this rule see the note in 2 L. R. A. (N. S.) 767, to the case of Gardner *v.* Beacon Trust Co., 190 Mass. 27 (76 N. E. 455, 112 Am. St. R. 303, 5 Ann. Cas. 581).

In *Thomas* v. *Kinsey,* supra, there was an action of trover by Kinsey against Thomas, administrator, for a promissory note made by Jesse B. Battle, payable to Kinsey or bearer. It appeared in the evidence that the intestate of Thomas had purchased the note *after maturity,* for value, from one Spain. Spain held the note as an attorney for collection. Mr. Justice Nisbet, for the court, wrote an elaborate and learned opinion (8 *Ga.* 428), to which reference is made. The length of the opinion forbids its reproduction here in its entirety, but it is deemed serviceable to quote the following excerpts: " There is voluminous discussion in the books, relative to the doctrine of equities as between the makers of notes and holders acquiring title both before and after maturity; all of which has just nothing to do with the question of title between the holder, buying of one having no title, and the true owner. From such causes, no doubt, has originated the apparent sanction which the opinion held by the counsel for the plaintiff in error in this cause has received from the books. It will be seen, however, that this sanction is merely apparent. . . The general rule of the law of this State and of Great Britain is, that no man can acquire a title to a chattel personal, from any one who has himself no title to it. A contrary rule would subvert the foundations upon which property rests, violate natural justice, and make the law the agent for outraging the first principles of morality. If property found or stolen, or obtained by violence or fraud, could be sold, and the title in the purchaser be maintained against the real owner, then would the law pander to injustice and patronise immorality. However innocent the purchaser under such circumstances may be, and however great his loss may be, and although he is in fact the victim of villainy, his title is subordinate to the title of the true owner. He gets the title of his vendor, and no more, which must yield to the title of the owner, whenever that is established. This rule is of general application, and embraces all kinds of personal property — applying generally to notes, bills, and other negotiable securities, as well as to stocks . . or horses. To this general rule there are a few exceptions. . . By the common law, and by the judgment of this court, negotiable instruments, transferable by delivery, *and when not yet due,* are an exception. . . What it is especially necessary to note is the general rule, embracing within its wide range bills, notes, and

other negotiable securities, as well as all chattels, and the exception which embraces in its restrictive scope negotiable securities which are transferred before they fall due. It could avail nothing now to question the equity or the morality of this exception. . . Bills, notes, and all other negotiable securities, after they are due, are subject to the great property rule first announced. That is, that he who bona fide and for value buys it from one having no title acquires none. He buys with it the title of his vendor, and does not get a title better than the rightful owner." After quoting from Story on Promissory Notes and Chancellor Kent, the opinion continues: " In relation to these elementary extracts I remark, that the writers are discussing *the title* of the holder, when derived from one *holding no title,* and one of the conditions upon which they make that title good is *that it be acquired before the paper is due.* The inference is logical and irresistible, that if the title is acquired *after it is due,* it is not good." The case of *Stanton* v. *Washington Loan & Banking Co.* follows the case of *Thomas* v. *Kinsey,* supra. According to the principles ruled in these two cases, the bona fides of the purchaser does not affect his title where he purchased after maturity from one who had no title.

2. The Bank of Oglethorpe invokes the application of the principles stated in the Civil Code, § 4537, which declares: " When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss." Counsel insists that Bank of Hillsboro and Bank of Oglethorpe both being innocent parties in the transaction, the former must suffer the loss, because of the unauthorized act of Mitchell County Bank, Bank of Hillsboro having put it in the power of Mitchell County Bank to inflict the injury. Conceding that Bank of Hillsboro did put it in the power of Mitchell County Bank to inflict the injury, still, in order for Bank of Oglethorpe to avail itself of the principles stated in § 4537, Bank of Oglethorpe must be an innocent purchaser as to the transaction. Was it an innocent purchaser in contemplation of law? We think not. The note was indorsed in blank, and therefore payable to bearer, and was negotiable. Civil ·Code (1910), § 4273. It is well settled that the maturity of the note does not affect its negotiability; it is negotiable after maturity, as well as before. By statute, however, the bona fide holder for

value of a bill, draft, promissory note, or other negotiable in-
strument, who receives the same before it is due and without notice
of any defect or defects, is protected from any defenses set up by
the maker, acceptor, or indorser, with specified exceptions.   Civil
Code (1910), § 4286.   Unless the bona fide holder receives such
instrument before maturity, he is entitled to none of the protec-
tion afforded under the above code section.   Conceding that that
Bank of Oglethorpe· received the note without notice other than
the facts appearing on the note itself, and also admitting the bona
fides of the transaction to be otherwise unquestioned, the fact
remains that the Bank of Oglethorpe received the note as col-
lateral security *after it was due.*   Manifestly it can claim no
benefit or protection under the Civil Code, § 4286, because of the
fact that it did receive the note after it was due.   This notice was
borne on the face of the note.   In banking parlance it did not re-
ceive the note " in due course."   This was, of itself, enough to
cause the bank to make inquiry.   " Notice sufficient to excite at-
tention and put a party on inquiry is notice of everything to which
it is afterwards found such inquiry might have led."   Civil Code,
§ 4530.   Reasonable inquiry in this instance would undoubtedly
have led to a revelation of the fact that Mitchell County Bank had
no title to the note, and that a pledge as collateral security to
Bank of Oglethorpe was a conversion pure and simple.   The Civil
Code (1910), § 4288, provides:   " The holder of a note is
presumed to be such bona fide and for value; if either fact is
negatived by proof, the defendants are let in to all their defenses;
such presumption is negatived by proof of any fraud in the pro-
curement of the note."   And § 4289 provides that " The holder of a
note as collateral security for debt stands upon the same footing as
the purchaser."   But it is also provided, in § 4291: " Any circum-
stances which would place a prudent·man upon his guard in pur-
chasing negotiable paper shall be sufficient to constitute notice to
a purchaser of such paper before it is due."   This code section, by
its terms, is applicable to the purchase of a negotiable paper " be-
fore it is due."·   The lawmakers apparently deemed it unnecessary
to state a rule so obvious as that this rule would apply to a pur-
chaser of a negotiable note *after maturity.*   However, as stated in
Anniston Loan & Trust Co. *v.* Stickney, 108 Ala. 146 (19 So. 63,
31 L. R. A. 234), " It is not contemplated that negotiable

paper shall pass current after maturity, and whoever might take the note after maturity would take it at his own peril." In both *Thomas* v. *Kinsey,* and *Stanton* v. *Washington Loan & Banking Co.,* supra, the courts deny the applicability of Civil Code, § 4537. In the former case, in discussing the exception to the general rule applicable to persons who purchase negotiable instruments the court said: "The equity of it [the exception] has been put upon the principle that where one of two innocent persons must suffer loss by the fraud of a third person, it must fall upon him whose credulity, or negligence, or misplaced confidence has enabled such third person to perpetrate the fraud. The principle is not questioned. But before the exception can be sustained upon it, the case which is brought within the exception ought to be the case contemplated by the principle; that is to say, the negligence, credulity, or misplaced confidence ought to be demonstrated. . . The true ground upon which the exception rests is commercial expediency. It is to promote the ready circulation and to extend the credit of negotiable paper, and in so doing subserve the great interests of commerce. The exigencies of commerce require that they should become practically and equivalent to, and representative of money. . . Does this exception extend to notes, bills, and other securities *past due?* It does not."

*Judgment affirmed. All the Justices concur.*