21257. LILLY *v.* CITIZENS BANK & TRUST COMPANY.

Decided January 18, 1932. Rehearing denied February 17, 1932.

*H. G. Rawls, A. B. Conger,* for plaintiff.

*J. C. Hale,* for defendant.

Bell, J. Mrs. M. M. Lilly brought a trover suit against Citizens Bank & Trust Company of Bainbridge, Georgia, to recover a county warrant issued to her by the commissioners of roads and revenues of Thomas county. The trial resulted in a verdict in favor of the defendant. The plaintiff excepted to the overruling of her motion for a new trial.

■ The evidence was sufficient to authorize the verdict in favor of the defendant, and the judgment refusing a new trial is therefore not subject to reversal on the general grounds. The following is a copy of the instrument the title to which was in controversy:

"No. 22062. Office of Commissioners of Roads and Revenues, Thomas County, Georgia. Thomasville, Ga. Jany. 14, 1927.

"Ordered that the County Depositary pay Mrs. M. M. Lilly the sum of three thousand five hundred dollars,

Charge to funds noted below

Roads: Bridges: Courthouse: Jail: City Court: Sup. Court: Pauper: General.

For loan to county at 6% due Dec. 31, 1927 .......... 3,500.00.
S. L. Heald, Clerk.        J. F. Pittman, Chairman C. C. T. C."

The plaintiff testified that this order or warrant was issued to her by the authorities of Thomas county as evidence of a loan of $3,500 which she made to the county, as indicated by the language and purport of the instrument, and that she authorized the delivery of the warrant for safekeeping to her son-in-law, C. P. Wester, who was cashier of Seminole Bank of Iron City. It further appeared from the evidence that Wester pledged the instrument to the defendant bank and trust company as security for a loan of $3,500, which he then and there obtained from the defendant for the use of Seminole Bank. The loan was made on February 19, 1927, long before the warrant was due, and Seminole Bank closed about May 6 while the loan was outstanding. The defendant made the loan in good faith, believing that the warrant belonged to Wester or the bank which he represented, and he had no information or notice of the claim of Mrs. Lilly until several months thereafter. At the time the warrant was pledged to the defendant it had the name of Mrs. Lilly written across the back of it, and, really, the only dispute in the evidence was as to the genuineness of this indorsement. Mrs. Lilly, the plaintiff, testified positively that she did not indorse the warrant or authorize anyone else to indorse it for her, and that the paper was absolutely unindorsed at the time she parted with it. Two other witnesses, however, compared the handwriting of several admittedly genuine signatures of the plaintiff with that upon the back of the warrant, and gave it as their opinion that the indorsement upon the warrant was made by the same person who executed the several signatures referred to. Each of these witnesses first testified to such facts as would qualify them as experts, and the writings themselves were introduced in evidence for inspection and consideration by the jury.

In addition to this, the cashier of the defendant bank and trust company testified to having participated in a previous conversation with the plaintiff, in which "she declined to admit or deny whether she indorsed the warrant," but stated that the warrant was put up to secure a described loan and that when the loan was paid off the

warrant should have been returned to her. While the witness testified that the loan referred to by the plaintiff was not the identical loan made by the defendant on the faith of the pledge, the plaintiff's refusal in that conversation either to admit or deny the indorsement, and her statement that the warrant had been pledged to secure a certain loan and should have been returned to her upon the payment of the loan, were circumstances from which the jury could draw inferences unfavorable to the plaintiff on the issue as to the genuineness of the indorsement; and upon a consideration of the evidence as a whole the jury were authorized to find against the plaintiff and in favor of the defendant upon that issue. In view of these circumstances, the evidence of the genuineness of the signature was stronger in the present case than in the case of *Collins* v. *Glisson*, 35 *Ga. App.* 111 (2) (132 S. E. 114), in which a dissenting opinion was rendered by Judge Stephens. The county warrant was an instrument the right and title to which could be transferred and assigned by indorsement and delivery. If the plaintiff delivered, or authorized the delivery of, the warrant to her son-in-law, Wester, only for the purpose of safekeeping, but if at the same time it bore her genuine signature as an indorsement thereon, the plaintiff thereby gave to the depositary such external indicia of the right of disposing of the warrant that he could, by pledging the same to an innocent person for a present consideration, divest the plaintiff's title. Civil Code (1910), § 583. When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss. The evidence authorized the application of these principles and amply supported the verdict for the defendant. See, in this connection, Civil Code (1910), §§ 4119, 4537; *Raleigh & Gaston R. Co.* v. *Lowe*, 101 *Ga.* 320 (28 S. E. 867); *Commercial Bank of Augusta* v. *Armsby Co.*, 120 *Ga.* 74 (47 S. E. 589, 65 L. R. A. 443). The present case is distinguished from *Turner* v. *Williams*, 29 *Ga. App.* 751 (2) (116 S. E. 553), in which the stock certificate was pledged not to secure a new loan, but as collateral to a pre-existing indebtedness.

■ The motion for a new trial contained a number of special grounds, but in these the chief complaint appears to be directed at an instruction, given in the language of section 583 of the Civil Code, that "all county orders are negotiable by delivery or indorse-

ment, and the indorser liable according to the terms of his indorsement, as in commercial paper." This charge was excepted to upon the ground that it amounted to a broad statement to the effect that "all county orders are negotiable," without exception and regardless of whether they contain words of negotiability, and upon the further ground that the principle stated therein, being general in its nature, did not apply to the county warrant in controversy, since the particular warrant contained no words of negotiability, and for that reason was not a negotiable instrument.

It does not seem to be material in this case whether section 583 of the Code was intended to provide that county warrants shall generally be treated as negotiable instruments, or, even if so, whether the particular order in controversy was an instrument of that character, although apparently each of these questions should be answered in the negative. *Continental Trust Co.* v. *Butts County,* 148 *Ga.* 623 (97 S. E. 679) ; Ga. L. 1924, p. 126, §§ 30, 65; Wall *v.* Monroe County, 103 U. S. 74 (26 L. ed. 430) ; 8 C. J. 599, 602.

The case turned entirely upon the question whether the warrant bore indorsement by the plaintiff at the time she delivered it or caused it to be delivered to her son-in-law, who pledged it to the defendant bank and trust company. The other facts were undisputed, and if the warrant was in truth so indorsed, the verdict for the defendant was the only possible legal result; and this is true whether the warrant was a negotiable instrument or not. The court charged the contentions of the parties as to the one material issue just indicated, and adequately instructed the jury as to the law applicable thereto. Whatever may be the full meaning and import of section 583, it at least provides that the right and title in a county order may be conveyed by delivery or indorsement, as in the case of commercial paper, and the section was applicable in part, if not in whole, under the facts of the present case. Even assuming that some portion of this section may have been impertinent, the giving of the entire section in charge did not operate to the plaintiff's disadvantage in relation to the sole question for decision by the jury. "It was not cause for a new trial that the judge read in charge to the jury a code section, part of which was applicable to the case under consideration and part not, it not appearing that the reading of the inapplicable part was calculated to mislead the jury, erroneously affected their verdict, or was prejudicial to

the rights of the complaining party." *Eagle & Phenix Mills* v. *Herron,* 119 *Ga.* 389 (3) (46 S. E. 405).

The record does not invoke a further construction of section 583. There is no merit in any of the other grounds of the motion for a new trial, and the court did not err in refusing the motion.

*Judgment affirmed.  Jenkins, P. J., and Stephens, J., concur.*

ON MOTION FOR REHEARING.

BELL, J.  The county warrant contained no words of negotiability, but under a specific statute the order was assignable and the payee could convey the title by delivery or indorsement.  The evidence authorized the inference that the instrument was duly indorsed by the plaintiff, Mrs. Lilly, at the time she delivered it to Wester for safekeeping.  Taking the jury's verdict as the truth as to this issue, the plaintiff has done more than merely to place the instrument in the hands of another for safekeeping, but she delivered it to him with her indorsement thereon.  This was to invest the holder with such external indicia of the right of disposing of the property that a sale or hypothecation to an innocent purchaser divested the true owner's title.  Civil Code (1910), § 4119. Whether the result would be the same if the payee had delivered the instrument without indorsement is not decided.

The difference between a case of this sort and one in which a person who, though innocent in fact, nevertheless purchases a negotiable instrument after maturity, is that in the latter case the paper, being dishonored, carries the mark of dishonor upon its face. In such a case the purchaser is charged with notice as a matter of law that the seller may not be the owner, and the principle stated in the Civil Code, § 4537, is inapplicable.  *Bank of Oglethorpe* v. *Swindle,* 155 *Ga.* 69 (116 S. E. 604, 33 A. L. R. 695).

In the instant case the holder was the apparent owner and became such by the positive act of the payee in delivering the paper to him with her indorsement thereon.  In view of such apparent ownership, and in the absence of anything to put the bank upon notice of the plaintiff's title, it was not required to make investigation.  Either the plaintiff payee or the defendant bank must suffer a loss from the act of the third person, and both were innocent. The bank, however, was not only innocent, but it did nothing whatsoever to enable the third person to inflict the injury.  On the other hand, the plaintiff invested the third person with the apparent

ownership of the paper, and is therefore the person to bear the loss. See 21 C. J. 1176-1177.

The distinction between the present case and the case of *Turner* v. *Williams*, 29 *Ga. App.* 751 (2) (supra), is that in that case the stock certificate was hypothecated for a *pre-existing* debt of the bailee or depositary. The creditor who thus received the certificate still had his debt and his claim upon the debtor was not changed. He was not injured, and, therefore, could not invoke the equitable rule as laid down in section 4537. *Matthews* v. *Kennedy*, 113 *Ga.* 378 (2) (38 S. E. 854).

Counsel for the plaintiff in error question the applicability of several decisions cited in our original opinion. We think the case of *Commercial Bank* v. *Armsby Co.*, 120 *Ga.* 74 (supra), was entirely pertinent, and that it supports our conclusion in the present case. In *Raleigh & Gaston R. Co.* v. *Lowe*, 101 *Ga.* 320 (supra), the Supreme Court said "If, however, a bill of lading, duly indorsed, is stolen by reason of the negligence or carelessness of the owner or his agent, the carrier in good faith delivering upon such bill of lading is not guilty of a conversion." It would seem that if an instrument of the same or like kind should be voluntarily delivered to another person with a proper indorsement thereon, the person so delivering would be in the same position as if he had negligently or carelessly permitted the instrument to be stolen. What can be the difference between negligently allowing an instrument so indorsed to be stolen, and in voluntarily placing it, in like condition, in the hands of another, who, after being thus invested with apparent ownership, disposes of the instrument contrary to agreement?

The case of *Tison* v. *Howard*, 57 *Ga.* 410, cited by counsel for the plaintiff in error, is distinguishable from the case at bar. In that case, Howard, the owner of certain cotton, which he desired to ship to his factors, Tison & Gordon, received from the transportation company duplicate bills of lading therefor, indorsing both of the bills of lading in blank and sending the original to the factors and depositing the duplicate with Lampkin & Company, bankers, for safekeeping and for no other purpose. The bailee bankers indorsed the duplicate bill of lading and by attaching it to a draft drawn upon the factors obtained an amount of money thereon. The owner of the cotton thereafter brought suit against the factors and

the bankers to recover *the value of the cotton as for a conversion.* While there is some language in the opinion that might tend to militate against our conclusion in the instant case, the court in that case seemed to stress the fact that the bankers did not even draw in express terms on the cotton mentioned in the bill of lading. Their drafts paid by the factors were drawn generally—not on this particular cotton. The bankers did not make any express pledge of the cotton or of the bill of lading. The owner himself was the consignor of the cotton and this appeared on the face of the bill of lading. In the headnote it was said that the proper person to pass a bill of lading by indorsement is the consignee, not the consignor. If the bankers had pledged the bill of lading, or had drawn upon the particular cotton covered thereby, a different question would have been presented.

If the county order was not a negotiable instrument, but was merely assignable as a chose in action, it is true that the defendant bank took it subject to the equities existing between the original parties, and would not be protected against a defense interposed by the maker, but this principle has no application here, since the issue as between the bank and the payee involves no right of the maker, the County of Thomas, to assert a defense. While the writer is of the opinion that the instrument could not be classed as a negotiable instrument, we still deem it unnecessary to decide this question.

*Rehearing denied. Jenkins, P. J., and Stephens, J., concur.*