HAAS *vs.* THE KANSAS CITY, FORT SCOTT AND GULF RAILROAD COMPANY.

1. Where a railroad company receives freight for shipment, and its employés strike or cease to work for the company, it is still bound to forward the freight within a reasonable time; but if the strike is accompanied with violence and intimidation, so as to render it unsafe to forward the freight, the company is thereby relieved from liability for delay, especially when the resistance made by the strikers is of such a character as could not be overcome by the company, or controlled by the civil authorities when called upon by it.

2. If the proceeds of flour sold when it did arrive, although unusually delayed in arriving, were sufficient to pay the amount of the draft advanced by plaintiff upon the faith of its shipment, he could not recover in this action. Profits he anticipated making at the time he made the advance could not be recovered by him from the railroad company.

3. The bill of lading for the flour not having been indorsed to plaintiff by the party in whose favor it was issued, the former could not maintain an action against the company upon it.

(a) Even if there had been such indorsement, a bill of lading is not such a negotiable instrument as to give to the assignee any other or greater rights than the assignor had; and the assignor having received the bill of lading with the knowledge that the flour was not at the time on the line of road of defendant, but on the line of a connecting road, he could not have recovered damages for delay in its delivery, if the connecting road was prevented from forwarding it by an armed mob.

(b) It is too late, after a case has been argued and after the court has spent hours in its investigation, to suggest mistakes in the record; such suggestions should be made on or before the calling of the case.

October 10, 1888.

Railroads. Strikes. Damages. Profits. Bills of lading. Indorsement. Negotiable instruments. Assignment. Practice. Before Judge VAN EPPS. City court of Atlanta. March term, 1888.

Reported in the decision.

WEIL & BRANDT, for plaintiff.

CALHOUN, KING & SPALDING, for defendant.

SIMMONS, Justice.

The only question argued before us in this case was, whether the verdict was contrary to the evidence or not. We have carefully examined the evidence sent up in the record, and we think that the verdict was right.

The plaintiff brought suit by attachment upon a contract or bill of lading, made by the defendant in Kansas City, whereby the defendant agreed with one Ayres to ship a certain quantity of flour from that place to Atlanta, Georgia, to the order of Ayres. Ayres, it seems, drew a draft on Haas, the plaintiff, and attached thereto the bill of lading. The amount of the draft, the date when drawn, and the time when Haas received it and accepted it, are not stated in the evidence. Haas testified that the flour ought to have arrived in Atlanta from Kansas City in from seven to ten days from the time of shipment. Instead of so arriving, it did not arrive until about a month after the date of the bill of lading, and by reason of this delay, Haas testified that he lost $163.00 ; that the price of flour between the date of the bill of lading and the time of its arrival had decreased so as to produce this loss. The defence of the railroad company was, that the delay in the shipment of the flour arose by reason of a strike of the operatives on one of its connecting lines, from which connecting line it was to receive the flour. The evidence shows that the employés of that railroad company had struck for higher wages, and had ceased to work for the railroad company ; that they had refused to work, and by violence prevented other employés from working for the company. The evidence shows that, after the company had succeeded in employing new hands, obstructions were put upon the tracks and trains derailed and bridges burned,

and that in some instances the new hands were fired upon by the strikers and some of them killed. The evidence further shows that it was an organized resistance by the strikers, and that the company called upon the civil authorities to protect its property and franchises against this armed resistance, and that the civil authorities were unable to do so. It further shows that the company exerted all its power to employ other hands and to run its trains, but that it could not do so on account of this armed resistance. Under this state of facts, the jury returned a verdict in favor of the defendant; and as we have before said, we think the verdict was right.

1. The law seems to be that where a railroad company receives freight for shipment, and its employés strike or cease to work for the company, the company is still bound to forward the freight within a reasonable time; but if the strike is accompanied with violence and intimidation, so as to render it unsafe to forward the freight, the company is thereby relieved from liability for delay in the delivery of the freight. The company is bound at all hazards to deliver freight safely, except in cases of the act of God or of the public enemy. It therefore ought to be allowed to plead and prove the acts of violence and armed and organized resistance of its former employés, especially when the resistance is of such a character as could not be overcome by the company or controlled by the civil authorities when called upon by it. Geismer *vs.* Lake Shore Railway Co., 55 Amer. Rep. 837, and cases there cited. (102 N. Y.)

2. We think the verdict was right for another reason. Haas did not show what was the amount of the draft drawn on him by Ayres, nor the amount received from the flour. He simply alleges in his declaration that he lost $163 by the delay in the arrival of the flour and the

decrease in its price. So far as this record discloses, the flour may have been sold for enough to pay the draft. This loss on the flour may have been the profits he anticipated making. But if the proceeds of the flour were sufficient to pay the amount of the draft advanced upon the faith of it, then he was not damaged, and could not recover in this action.

3. Whether the above propositions are correct or not, we still think the verdict was right, for another reason. The record does not show that this bill of lading was assigned or indorsed by Ayres to Haas. This being true, Haas, under our code, could not bring suit on the contract made between the railroad company and Ayres. It is true that after the argument in this case was concluded, and after we had devoted at least half a day to its further consideration, we were informed that the bill of lading had been assigned and indorsed by Ayres to Haas, and that the clerk had made a mistake in not copying the indorsement in the record. It is the duty of counsel to examine the records sent here from the courts below, and to ascertain if any mistakes have been made in copying the original documents, and if such mistakes have been made, to suggest a diminution of the record on or before the calling of the case in this court. It is too late, after the case has been argued here, and after this court has spent hours in the investigation of the law of the case, to suggest mistakes in the record. Even if the record showed that the bill of lading had been assigned or indorsed by Ayres to Haas, we would still hold that the verdict was right in this case. A bill of lading is not such a negotiable instrument as to give the assignee any other or greater rights than the assignor had. The assignee has only such rights as Ayres would have had. "Bills of lading are symbolic of the property they represent, and though

transferable so as to pass title to the property in a transaction intended to have that effect, are not, in the full commercial sense, negotiable paper, and are not attended with all the incidents of such paper in favor of *bona fide* purchasers." *Tison & Gordon vs. Howard*, 57 *Ga.* 410; Shaw *vs.* Railroad Co., 101 U. S. 557.

Haas says in his testimony that when he bought this flour, he thought it was on the line of the defendant's road; whereas in truth it was not on that line, but on the line of one of its connecting roads, and this connecting road was the one on which the strike occurred which delayed the flour; that if he had known it was not on the defendant's line of road, he would not have purchased it. The evidence shows that Ayres, from whom Haas received the bill of lading, knew when he got the bill of lading from the company that the flour was not on the line of its road, but on this connecting line. And Ayers having received the bill of lading with knowledge that it was not in possession of the defendant, but on the connecting line of road, he could not recover damages from the defendant for delay in the delivery of the flour, if the connecting line was prevented from shipping it by the acts of an armed mob. For the se reasons, we affirm the judgment of the court below in overruling the motion for a new trial.

Judgment affirmed.