THE CENTRAL RAILROAD AND BANKING COMPANY *v.* THE GEORGIA FRUIT AND VEGETABLE EXCHANGE, for use.

1. It having been shown on the trial of a suit against a railroad company for damages alleged to have been occasioned by delay in delivering a car-load of fruit, that the defendant accepted the same for transportation and gave a receipt describing the car, stating it was consigned to a named party at a designated point, and containing the figures "62.20," the point named being in another State and beyond the defendant's line, there was no error in admitting evidence to prove that the "62.20" was the amount of the freight for the entire distance, and was prorated among all the railroad companies over whose lines the car was routed in order to reach its destination; nor in leaving the jury to determine whether or not the receipt, in the light of such evidence, constituted a through contract of shipment.
2. The evidence, being as above stated and uncontradicted, demanded a finding that the receipt was a through contract of shipment, and errors made in submitting this issue to the jury were therefore immaterial and harmless.
3. The defendant having received the fruit under a special through contract of shipment, to be transported to destination over other lines, and not having in any manner limited its legal liability, is bound, by itself or competent agents, to deliver the goods at

destination within a reasonable time, and is liable for damages resulting from the negligence of such agents in failing to so deliver, as it would be for such negligence upon its own line.

4. Whether a common carrier would or would not be excused for any delay in delivering goods resulting entirely from a strike by some of its employees in which there was neither violence nor lawlessness; yet, where it affirmatively appears that the delay was caused in part by the disobedience and failure in the performance of their duties of other employees who did not engage in the strike, but were retained in the company's service, and the carrier not having shown that the injury resulted from delay caused solely by the striking employees, it is liable for failing to deliver in what would usually be a reasonable time a car-load of fruit which became worthless from inherent qualities because alone of detention *en route* beyond such reasonable time.

5. The verdict was warranted by the evidence, and the court committed no error in refusing a new trial.

March 27, 1893. Argued at the last term.

Before Judge MILLER. Houston superior court. April term, 1892.

R. F. LYON, for plaintiff in error.

HARDEMAN, DAVIS & TURNER, *contra*.

LUMPKIN, Justice.

1, 2. The decision of this court in the case at bar was made in point of time earlier than that rendered in the case of the *Central Railroad & Banking Company* v. *Hasselkus & Stewart* (this term), but the opinion in the latter case, delivered by Justice SIMMONS, having already been filed, is here cited as establishing what constitutes a through contract of shipment by a common carrier undertaking to transport goods beyond the terminus of its own line. The opinion referred to and the cases therein cited render unnecessary a further discussion at this time of the question indicated.

In the present case, the figures "62.20" in the contract of shipment were ambiguous, and parol evidence was properly admitted to prove that they represented the amount of freight for the entire distance, and also, that this amount was prorated among all the railroad

companies over whose lines the car was routed in order to reach its destination. It certainly was not error as against the railroad company to leave to the determination of the jury the character of the contract entered into between the parties, with authority to find that if the facts were as indicated, it was a through contract of shipment. The testimony explaining the ambiguity in the contract was uncontradicted, and demanded the finding made by the jury on this question. Consequently, any inaccuracies in the statement by the judge of the contention by the defendant company, or in his instructions submitting to the jury the issue thus made, were immaterial and harmless.

3. The railroad company rested its defence on this branch of the case solely upon the ground that it did not make a through contract of shipment, but was only bound to safely transport the melons to the terminus of its own line, and there deliver the shipment in good order to the next connecting carrier. This contention, as has been shown, cannot be maintained, and the company must be held to have undertaken by its contract to deliver the melons to the consignee named in Cincinnati. No express stipulation is contained in the contract as to the time in which the shipment was to be transported to destination, nor in any other manner did the company therein seek to limit its legal liability. This being true, we have no difficulty in reaching the conclusion that the company was bound, by itself or by competent agents, to deliver the fruit at destination within a reasonable time, and is liable for damages resulting from a failure to so deliver, whether the delay was caused by negligence occurring upon its own line, or upon the line of any connecting carrier it may have selected as its agent to complete the transportation.

4, 5. The evidence introduced on the trial disclosed the fact that the delay in the delivery of the melons

was to some extent caused by a strike occurring upon the line of the Louisville & Nashville Railroad Company, one of the connecting carriers over whose road this shipment was routed. This strike originated among the yard switchmen at Cincinnati and at Wilder's Station, and later, on the same day, the switchmen in the company's yard at Louisville joined in the strike. The officers of the company made immediate and diligent efforts to supply the places of the strikers, and did in fact succeed in getting a sufficient number of new men to handle the freight at Wilder's, which was the point at which the blockade then existed. Thereupon, the conductors and brakemen on the division between Cincinnati and Louisville, from sympathy with the strikers, also refused to work. A number of new men were procured by the company to fill the place of these trainmen, but owing to their unfamiliarity with the road, in connection with the refusal of the engineers to handle more than three or four cars in any one train, the company was utterly unable to relieve the great accumulation of freight caused by the strike. It appears that the engineers did not themselves strike, but because of their sympathy with the strikers, refused to perform their full duty, greatly embarrassing the officers of the company by declining to run their engines with the full complement of cars usually making up a train. It does not appear that any of these engineers were discharged by the company in consequence of their willful refusal to perform their duty, or that any effort was made to secure other men who were competent and willing to perform the service required of them. Neither does it appear that the strike was attended with any acts of violence on the part of the strikers, or those in sympathy with them, or that any of the new men procured by the company were intimidated or in any manner interfered with. When the car of melons arrived in Louisville, the strike

had been in progress several days, and it was impossible for the company to forward it to its destination, which was Cincinnati. In consequence, the car was detained at the former place two days. Upon the yardmen at Louisville returning to work at the expiration of that time, this particular car was actually given preference over other equally perishable freight and was promptly forwarded to destination, but upon arrival in Cincinnati, the melons were found to be decayed and utterly worthless.

On the hearing of the case in this court, counsel for the plaintiff in error insisted that, conceding the defendant company had made a through contract of shipment, the evidence failed to disclose any negligence on the part of either the initial road or any of its connecting carriers, and that the trial court erred in its instructions to the jury upon this branch of the company's defence. In presenting the argument upon this contention, counsel stated (evidently under a misapprehension of the facts), that after the Louisville & Nashville Railroad Company had performed its full duty in promptly securing new men to carry on its business, they in turn, through sympathy with or persuasion from the strikers, also refused to work, and the officers of the company were thus rendered powerless to meet the great and unexpected emergency. He conceded the fact that no lawlessness or violence was indulged in by the strikers or their allies, but insisted that, for all practical purposes, the company was as helpless as though its business had been interrupted by the irresistible force of an armed mob, and that, therefore, this case does not differ in principle from that of *Haas* v. *Kansas City &c. R. R. Co.*, 81 *Ga.* 792. It was held in that case that: " Where a railroad company receives freight for shipment, and its employees strike or cease to work for the company, it is still bound to forward the freight within a reasonable

time; but if the strike is accompanied with violence and intimidation, so as to render it unsafe to forward the freight, the company is thereby relieved from liability for delay, especially when the resistance made by the strikers is of such a character as could not be overcome by the company, or controlled by the civil authorities when called upon by it." This decision rests upon sound principle and is supported by abundant authority. Many cases have been examined, and might be cited, to the same effect, a number of them of recent date. Yet, after a most laborious investigation, we have been unable to find any case wherein a carrier has been relieved of liability because of a strike, where the delay in forwarding the freight was caused, not by lawless violence on the part of its former servants, or their sympathizers, in preventing other employees from carrying on the company's business, but merely because of the carrier's inability to promptly secure new men to take the place of the strikers. A determination of this question, however, is not necessary to a correct decision of the present case. In the first place, counsel is mistaken in stating that although the company used all diligence to supply the places of the strikers, yet as soon as it succeeded in securing new men, they were in turn prevailed upon to leave its employment. There is not the slightest intimation in the record that the strikers used persuasion, or any other means, to influence the new men to join them, or indeed, that any of the new servants employed did in fact refuse to continue in the company's service, for this or for any other cause. For aught that appears to the contrary, all the new men the company succeeded in procuring remained in its service, but there seems to have been great difficulty in obtaining a sufficient number to carry on its business. Moreover, counsel entirely ignores one of the main features which the railroad officials testified was the cause of the

delay in forwarding this car which was detained at Louisville. Although the engineers did not themselves join the strikers or leave the company's employment, they willfully refused to do their full duty, and made only a pretence of performing the service for which they were employed. They were, nevertheless, throughout the entire strike, retained in the company's employment. That the company is responsible for their conduct while acting as its servants, there can be no question. All the cases wherein a carrier has been excused because of the willful refusal of its former employees to perform services which their duty to their master required of them, proceed upon the idea that one who leaves the company's service to join in a strike and engages in acts of lawless violence against his former master, can no longer be considered an employee of the company for whose conduct it is in any manner responsible. That these engineers were guilty of willful rather than negligent failure of duty, cannot change the fact of liability, especially where the company, with full knowledge of such dereliction of duty on their part, countenanced their wrongful and willful behavior by still retaining them in its service. According to the testimony of the railroad officials themselves, the misconduct on the part of their engineers was one of the main causes of the company's inability to forward this car. Doubtless the delay was largely caused by the company's inability to fill the places of the striking yardmen at Louisville, although this fact is not made to distinctly appear. No attempt was made to show that had the engineers performed their full duty, the detention of the car would nevertheless have been unavoidable, nor is it possible to ascertain from the facts in evidence how much any one particular element of the combined causes of the company's embarrassment in carrying on its business contributed to the delay. Granting that the defendant

could relieve itself from liability by showing that every possible effort was promptly made to secure other employees in lieu of those who had violated their obligations to their employer, the proof offered falls far short of due diligence in this respect. If the company's engineers wrongfully refused to do their duty, certainly it was incumbent upon the railroad officials to discharge them and use every endeavor to secure new men who were competent and willing to perform the services they ought to have rendered. It does not appear that the officers of the company made any attempt whatever to do this; and however great their embarrassment may have been, if they voluntarily elected, for any cause, to retain in the service of the company employees who openly and willfully refused to properly attend to the duties devolving upon them, the company must be held answerable for any loss to its patrons which they may have suffered in consequence.

Taking as true all that the defendant company proved in its defence, it cannot be excused even upon the test of liability suggested and relied on by its counsel. The verdict for the plaintiff in the court below was demanded by the evidence, and a new trial was properly refused.                               *Judgment affirmed*