SOUTHERN EXPRESS COMPANY *v.* ROSE COMPANY.

1. A corporation engaged in business as a common carrier is bound to receive all goods offered it for transportation, which it is able and accustomed to carry, upon compliance with such reasonable regulations as it may adopt for its own safety and the benefit of the public; and a private party may, by mandamus, enforce the performance of this public duty by such common carrier as to matters in which such party has a special interest.

2. A merchant located and carrying on business in the City of Atlanta, and who has been accustomed for many years to sell therein the goods in which he deals to persons residing in Lawrenceville, upon orders received from them by mail, and to ship the goods to such persons by express, has such a special interest in the performance by an express company, operating a line of transportation between such cities, of its public duty, relatively to packages containing goods—such as it is able and accustomed to carry—which he has sold to customers residing in Lawrenceville, and which he, under the reasonable regulations of such common carrier, offers to it for shipment and delivery to the owners of such goods, as entitles him to the writ of mandamus to compel such express company to accept, transport, and deliver such goods, when it, without lawful excuse, refuses to do so.

3. The municipal ordinance of the City of Lawrenceville which declares it to be unlawful for any railroad or express company, or any other person or persons to deliver or cause to be delivered, in such city, any package containing wine, whisky, beer, or any other intoxicating liquors, "without first paying into the treasury of said city the sum of one thousand dollars per annum as a license for carrying on said business in said city," and which prescribes a penalty for its violation, is void, as the mayor and council of the city had no power, under its charter, to enact such ordinance.

4. A common carrier, able and accustomed to transport such goods from Atlanta to Lawrenceville and to deliver the same to the consignees thereof in the latter city, can not lawfully refuse to do so merely because of the passage of such invalid municipal ordinance.

Argued October 2, 1905.—Decided January 9, 1906.

Mandamus.    Before Judge Pendleton.    Fulton superior court. June 7, 1905.

On March 16, 1905, the mayor and council of the City of Lawrenceville passed the following ordinance: "Be it ordained by the mayor and council of the City of Lawrenceville, Ga., that it shall be unlawful for any railroad company, any express company, or any other person or persons to deliver or cause to be delivered any package in the City of Lawrenceville, Ga., containing wine, whisky, beer, or any other intoxicating liquors or whisky without first paying into the treasury of said city the sum of one thousand dollars per annum as a license for carrying on said business in said city.    Any person or persons engaged in this business, failing or refusing to pay said license, shall, upon conviction thereof, be punished as prescribed in Ordinance No. 1 of the by-laws of said city.    Each day in which said business is carried on without a license shall be held to constitute a new offense.    This ordinance to take effect on the 25th day

of March, 1905. By order of the city council of Lawrenceville, Ga., this the 16th day of March, 1905."

Ordinance No. 1, herein referred to, defined disorderly conduct within the city and prescribed the punishment for the same. On March 25, 1905, the R. M. Rose Company, a corporation engaged in the wholesale liquor business in the City of Atlanta, received, by mail, from J. L. Exum, of Lawrenceville, Ga., an order for one gallon of whisky of a designated brand. Accompanying this order was an express money order in full payment for the whisky. Thereupon the R. M. Rose Company put a gallon of whisky in a jug, which was properly sealed and directed to J. L. Exum, at Lawrenceville, Ga., and this jug was taken by its agent to the office of the Southern Express Company in the City of Atlanta, and there tendered to the agent of the express company for shipment and delivery to Exum at Lawrenceville, the agent of R. M. Rose Company at the time offering to prepay the express charges on the package. The agent of the express company refused to receive the jug of whisky for shipment to Lawrenceville, and stated that he would not receive any other such shipment until the ordinance of the City of Lawrenceville relative to the matter should be repealed. The Atlanta agent of the express company was acting in accordance with the following instructions from the express company:

"Southern Express Company. Office of Second Vice-President.

"Chattanooga, Tenn., March 22, 1905.

"The City of Lawrenceville, Georgia, has passed an ordinance imposing a tax of one thousand dollars on any railroad company, express company, or any one else delivering intoxicating liquors within the corporate limits of that city. All agents in Georgia are hereby instructed not to accept such shipments for Lawrenceville until further notice. Charles L. Loop, Second Vice-President."

The R. M. Rose Company then brought, in the superior court of Fulton county, a petition for a mandamus to compel the Southern Express Company to receive, transport, and deliver the jug of whisky to the consignee in Lawrenceville, and to compel it to receive from the petitioner, upon receiving its fair charges therefor, packages containing wine, beer, and other liquors, when properly packed under the rules and regulations of the express company, for transportation to Lawrenceville and to there deliver the same to the parties to whom such packages should be consigned. · Upon this

petition the judge granted a mandamus nisi, requiring the express company to show cause why a mandamus absolute should not be granted as prayed for. The answer of the express company raised certain issues of fact as well as issues of law; and when the case came on for trial in term, by consent of counsel both the questions of fact and the questions of law were submitted to the judge for determination, the right of either party to except to the judgment and carry the case to the Supreme Court being reserved. Upon the trial the facts alleged in the petition to have occurred were established, and the express company, in support of the defense set up in its answer, showed the existence of the municipal ordinance above set forth, contended that the ordinance was in effect prohibitory, and that so long as the ordinance was in force it had the right to refuse to accept any package of intoxicating liquor for shipment to and delivery in Lawrenceville. It also made certain other legal contentions which are sufficiently indicated in the opinion. The trial resulted in the grant of a mandamus absolute, requiring the express company to receive the jug of whisky in question, upon the payment of the express charges, and to transport the same to the City of Lawrenceville and there deliver it to the consignee, Exum; and also to receive, at its public offices in the City of Atlanta, from the plaintiff, all other packages of intoxicating liquors, when properly packed and directed, under the reasonable rules and regulations of the express company, and when delivered on straight shipments as opposed to collect on delivery shipments, and transport the same to the City of Lawrenceville and there deliver them to the consignees thereof. The express company excepted to this judgment.

*C. H. Brand* and *DuBignon & Alston,* for plaintiff in error.
*Rosser & Brandon,* contra.

FISH, C. J. (After stating the facts.) 1. One of the contentions of the express company is, that the applicant for the writ of mandamus had an adequate and complete remedy at law by an action for damages, without resorting to the extraordinary writ of mandamus, and therefore the writ should have been denied. In support of this contention, the plaintiff in error cites Hutchinson on Carriers, §115b, to the effect that, "If the carrier refuses without lawful reason to accept and carry goods, the owner may maintain an action against the carrier for the damages sustained by such wrong-

ful refusal. This remedy by action is usually adequate to secure the plaintiff's rights, and therefore, in accordance with well-settled principles, mandamus will not lie to enforce the performance of the duty." In the same section, however, this author says: "Where the duty was expressly imposed by State statute and by the United States interstate commerce act, and the refusal was continuing and the injury irreparable, a mandatory injunction was granted to secure performance;" citing Chicago Railway Co. v. Burlington Railway Co., 34 Fed. 481. We are of opinion that, even under the rule as laid down by this author, the judge below properly held that mandamus would lie in the present case. For, as we shall presently see, the duty of the express company which the petitioner sought to enforce by mandamus is one which, in this State, is expressly imposed by statute, and we think it is obvious, from the evidence, that the damages which would ensue to the petitioner by the continued refusal of the express company to transport intoxicating liquors from Atlanta to Lawrenceville would be incapable of being ascertained. It is clear, however, that the general rule laid down by Hutchinson is not applicable in this State. The Civil Code, §2278, provides: "A common carrier, holding himself out to the public as such, is bound to receive all goods and passengers offered that he is able and accustomed to carry, upon compliance with such reasonable regulations as he may adopt for his own safety and the benefit of the public." Here we have a public duty of the common carrier defined and imposed by statute. Section 4869 provides: "A private person may by mandamus enforce the performance by a corporation of a public duty as to matters in which he has a special interest." Here the right to enforce by mandamus the performance of this public duty by a corporation is given to a private party having a special interest in the matter, and this right is clearly not dependent upon his being without adequate remedy by a suit for damages for its non-performance in his behalf. He has the right to compel the performance of the public duty, and is not compelled to seek redress in damages for its non-performance at his instance. The defendant admitted that it was chartered under the laws of this State as an express company. "An express company, which pursues continuously, for any period of time, the business of transporting goods, packages, etc., is a common carrier." *Southern Express Co.* v. *Newby*, 36 *Ga.* 635; Bank of Kentucky v. Adams Express Co., 93

U. S. 174; Buckland *v.* Adams Express Co., 57 Mass. 124; Kirby *v.* Adams Express Co., 2 Mo. App. 369.    In the present case, therefore, the respondent was under the public duty of receiving and transporting all goods, which it was able and accustomed to carry, which were offered to it for transportation, upon compliance by the intending shippers with its reasonable rules and regulations.    It admitted in its answer that it was "engaged in transporting liquors, wines, and beers, when properly packed, from stations on its line to other stations on its line, when not prohibited by law;" and "that up to the 25th day of March, 1905, it was engaged in transporting from stations on its line to Lawrenceville, Gwinnett county, Georgia, for such persons as should so demand its services, packages of liquors, wines, and beer when properly packed and when delivered on straight shipments as opposed to collect-on-delivery shipments;" and "that it was up to said date engaged in the business of accepting from the said R. M. Rose Company packages of wines, beer, and liquors at its place of business in the City of Atlanta, Georgia, for shipments in the manner above described to Lawrenceville," Georgia.    It is obvious, therefore, that the writ of mandamus absolute was properly granted, unless some other contention of the express company is meritorious.

2. Another contention of the express company is, that if the writ of mandamus would lie at all, Exum, who had purchased the liquor from R. M. Rose Company and paid for it, and to whom, therefore, it belonged when that company offered it to the express company for shipment to Lawrenceville, was the proper party to apply for the writ, and the only one in whose behalf it could be issued.    We think this contention is fully answered by the mere reading of the Civil Code, § 4869, which is quoted above.    It seems very evident to us that a wholesale liquor dealer located in Atlanta, which, as the evidence shows, had been for many years engaged in selling, in Atlanta, liquors to persons living in Lawrenceville and vicinity, upon orders therefor received by mail, and shipping the goods to the purchasers at Lawrenceville by express, has a special interest in seeing that the express company shall perform its duty by accepting from such dealer shipments of liquors to its customers in Lawrenceville and transporting and delivering the same to the consignees thereof.    Its interest in the matter is far greater than that of any one of its Lawrenceville customers, because its business dealings

with people living in Lawrenceville and vicinity would be greatly restricted and diminished if it was denied the right to ship its goods, by express, to its customers at Lawrenceville. And if such right could be lawfully denied to the petitioner by the express company, it could, for like reasons, be denied to the petitioner by a railroad company, so that the petitioner would be practically without the means of shipping its goods to Lawrenceville.

3, 4. Coming down to the merits of the case itself, the defense set up by the express company was, that it had not paid the license tax required by the above-quoted municipal ordinance for delivering or causing to be delivered, in the city of Lawrenceville, any package containing wine, whisky, beer, or other intoxicating liquor, and it would therefore subject itself to prosecution and punishment by undertaking to transport such liquors to Lawrenceville and there deliver them to the consignees thereof. It further contended that the ordinance requiring the payment of one thousand dollars for a license to deliver intoxicating liquors in Lawrenceville was, in effect, prohibitive and was so intended; and that upon the trial it was admitted that the gross sum received by the express company for the shipping of intoxicants to Lawrenceville for one year is $469.50. There was no merit in this defense, as, in our opinion, the municipal ordinance in question is invalid, as the mayor and council of the City of Lawrenceville had no power under the charter of the city to pass it. Authority to enact this ordinance is claimed under each of several sections of the city's charter, which is found in Acts of 1904, p. 489 et seq. One of these is section 1, wherein it is provided, that the city "may sue and be sued, contract and be contracted with, plead and be impleaded, have and use a common seal, make and enact, through its mayor and council, such ordinances, rules, regulations, and resolutions for the transaction of its business and the welfare and proper government of said city as mayor and council may deem best, and which shall be consistent with the laws of the State of Georgia, and the United States." Another is section 32, which provides, "That the mayor and council of said city shall have full power and authority to pass all by-laws and ordinances for the prevention and punishment of disorderly conduct and conduct liable to disturb the peace and tranquility of any citizen or citizens thereof, and any other by-law, regulation, and ordinance that they may deem proper for the security of the peace, health, order, and good govern-

ment of said city." Provisions substantially the same as those here relied on are found in most, if not all, of the municipal charters of this State. They are usually embraced in what is commonly called the "general welfare" clause, and they deal with the police and not the taxing power of the municipality. Construing the ordinance in question as a taxing or licensing ordinance, the power to pass it can not be derived from these sections of the city's charter. The power "'to pass all by-laws and ordinances for the prevention and punishment of disorderly conduct and conduct liable to disturb the peace and tranquility of any citizen or citizens, . . and any other by-law, regulation, and ordinance that they may deem proper for the security of the peace, health, order, and good government of said city," or, in the language of section 1, "the welfare and proper government of said city," does not include the power to levy a tax upon property or upon the carrying on of a business or vocation within the city. The rule is well established that municipal corporations can levy no tax, general or special, upon the inhabitants of the municipality or upon property therein, unless the power to do so be plainly and unmistakably conferred upon them by the State. *Albany Bottling Co.* v. *Watson*, 103 *Ga.* 503; 2 Dill. Mun. Corp. (4th ed.) 763; Cool. Tax. (2d ed.) 678. As was said by Mr. Justice Little in the above-cited case, "The power to tax is incident to the State. Neither counties nor municipal corporations of any character possess this power to any extent unless conferred by the constitution or laws of the State, and therefore such power can only be exercised when delegated in plain and unmistakable terms, or when it results by necessary implication from other powers expressly granted. 25 Am. & Eng. Enc. L. 580. The exercise of this power being so limited and restricted, the burden is on every political division of the State, which demands taxes from the people, to show the authority to exercise it in the manner in which it has been imposed." It is obvious that no such power is plainly and unmistakably conferred by the charter sections under consideration.

It is contended, however, that this ordinance was a valid exercise of the police power conferred upon the municipality by section 32 of the charter. A similar contention was unsuccessfully made in *Henderson* v. *Heyward*, 109 *Ga.* 373, which involved the validity of an ordinance of the City of Cartersville, which undertook to make it penal for one who had lawfully purchased, without the limits of

the municipality, alcoholic liquors, to receive the same therein from any common carrier or person, without paying a specific tax of a designated amount for the privilege of so doing. The "general welfare" clause of the charter of the city was as follows: "The mayor and aldermen shall have power to pass all ordinances that they may consider necessary to the peace, good order, health, prosperity, comfort and security of the city and the citizens thereof, not inconsistent with the constitution and laws of this State, and of the United States." It will be seen that these provisions are substantially the same as those of section 32 of the charter now under consideration. The power conferred upon the municipal government of the City of Cartersville by the above-quoted section or clause of its charter is no more restricted than that conferred upon the municipal authorities of the City of Lawrenceville in the charter provisions with which we are dealing. The qualification of the power, in the Cartersville charter, by the words, "not inconsistent with the constitution and laws of this State, and of the United States," would have been necessarily implied, if it had not been expressed; and the same qualification of the power to pass ordinances, etc., "for the welfare and proper government of [the] city" appears in section 1 of the charter of Lawrenceville, although not expressed in section 32 thereof. In reaching the conclusion announced in the Cartersville case, this court held, "that a municipal corporation can not, without express legislative authority so to do, pass any ordinance making penal the buying of alcoholic liquors from one lawfully authorized to sell the same;" and that it therefore followed, "that the reception by the purchaser of liquor so bought is not an act which can be legitimately dealt with by the authorities of a municipal corporation as an act within the police power of the State, in the absence of express power so to do." In that case, as we have seen, the municipal authorities undertook to prohibit the reception, in Cartersville, of liquors lawfully purchased elsewhere; and it was held that this could not be done. In the present case, if we construe the ordinance in question as being prohibitory in its purpose, the municipal authorities of Lawrenceville have undertaken to prohibit the delivery, in that city, of liquors lawfully purchased elsewhere. It is obvious that under the decision in the Cartersville case they could not lawfully do this; for to pre-

vent the delivery would be to prevent the reception, as the one can not occur, without the other.

Another of the sections of the city charter invoked to sustain the validity of the ordinance is section 48, the language of which is as follows: "That said mayor and council shall, in the exercise of their police powers, have full power and authority to pass such ordinances as they may think proper to more effectually prohibit the illegal sale of spirituous, vinous, malt, or intoxicating liquors within the corporate limits of the city of Lawrenceville, and to that end may provide ordinances punishing any person or persons keeping in said city spirituous, vinous, malt, or intoxicating liquors for illegal sale." The contention that this section of the city charter conferred upon the municipal authorities power and authority to pass the ordinance in question scarcely deserves serious discussion. The ordinance does not deal with the sale of intoxicating liquors within the limits of the city, nor with the keeping, in the city, of such liquors for sale. It is admitted that the sale of such liquors within the City of Lawrenceville, or elsewhere in the county of Gwinnett, is prohibited by law; and the manifest purpose of the ordinance, construed as an effort to exercise the police power, was to prevent the delivery in Lawrenceville of liquors lawfully purchased outside of Gwinnett county.

The other sections of the municipal charter which are invoked to support the ordinance are sections 28 and 30; and here the effort is to uphold the ordinance as a valid exercise of the power of the municipal authorities to impose, and enforce the payment of, license taxes upon any business, profession, or vocation carried on within the city. The first of these sections provides, "That said mayor and council shall have full power and authority to require any person," etc., "engaged in or carrying on, or who may engage in or carry on, any trade, business, calling, vocation, or profession within the corporate limits of said city, . . to obtain license to carry on such business or profession and pay for such . . license such amount as the mayor and council may by ordinance prescribe." It also provides that, "Said mayor and council may provide by ordinance for the punishment" of any one "required to pay such license, who [engages] in or [offers] to engage in such business or occupation before paying such tax, or taking out such license. Section 30 confers upon the municipal authorities power to license billiard tables,

theatrical companies, and other enumerated things, to place a tax upon brokers, and to regulate markets, etc., auctioneers, itinerant traders, etc., and concludes as follows: "Also all solicitors or canvassers, selling goods or wares by sample at retail to consumers; and all other establishments, businesses, callings, or vocations which under the constitution and laws of this State are subject to taxes." The power claimed for the city under section 28 is the power to impose a license tax upon every person, etc., "who may engage in or carry on any trade, business, calling, vocation, or profession within the corporate limits of said city;" and the power relied on under section 30 is the power to impose such a tax upon all "establishments, businesses, callings, and vocations which under the constitution and laws of this State are subject to taxation." It is clear that the mere delivery, by a common carrier, of goods of a particular class to the consignees to whom they have been shipped is not a trade, profession, or establishment. Is it a business, calling, or vocation? We think not. It is termed in the ordinance in question a business, and the effort is made to tax it as such. But it seems very clear to us that the mere delivery of goods of a particular class, at the point of destination, by a common carrier, to the consignees of such goods is not a business engaged in by the carrier, but a mere incident to the carrier's business. In and of itself, it is no more a business than is the measuring of calico, homespun, or silk by a retail dry-goods merchant, when he sells the same to his customers, or the delivery by such merchant of the cloth to the purchasers thereof a business conducted by him. It is no more a calling or vocation than is the mere delivery of shoes by a shoemaker, or plows by a blacksmith, to the customers for whom the shoemaker or the blacksmith has made them. It is but a fragmentary part of the business of the carrier. If the city has the power to arbitrarily declare that the mere delivery by a railroad or express company of intoxicating liquors, within its limits, is a business and to impose a license tax upon it as such, then it must necessarily have the power to deal in a like manner with the mere delivery by such carriers of each and every other class of goods transported by them for the public. Under such a construction of the city's power to tax a business, it could separately tax, as a separate business, the delivery by a common carrier of dry goods, of shoes, of drugs, of hardware, and so on and on, through the vast variety of goods han-

dled by the carrier, making, for the purposes of taxation, a separate·
business of the delivery of each variety of goods.   Further, if the
city can, for the purposes of taxation, make a separate business of·
the mere delivery of a particular kind of goods by a common carrier,
it can make a separate business of every other incident involved in
the carrier's handling of such goods, within the incorporate limits.
For instance, it could make a separate business of the receiving for·
shipment of each variety of goods, another of the mere keeping of
each kind of goods until transported or delivered, and still another·
of the transporting, within the limits of the municipality, of each
kind of goods to or from the warehouse or storeroom of the carrier.
Under this construction of the power of the city to tax a business,.
there would be practically no limit whatever to the divisions and
subdivisions which it might make of a common carrier's business·
for the purposes of taxation.   Where a municipality is simply given
the power to impose a license tax upon a business, it can not divide·
such business into its constituent elements, parts, or·incidents, and
levy a separate tax on each or any element, part, or incident thereof.
The case of *Hewin* v. *Atlanta,* 121 *Ga.* 723, is directly in point here.
There it was held: " (1) That the furnishing of trading stamps by
a merchant to his customers did not constitute a business separate·
and distinct from that of selling merchandise, but was merely an
instrumentality in or an incident to that business, being in its nature·
incapable of such separate existence as to constitute of itself a busi-
ness in either a commercial or a legal sense.   (2) ·That authority in
a municipal charter 'to make just and proper classification of busi-
ness for taxation,' and 'to classify business and arrange the various.
business, trades, and professions carried on in said city into such
classes of subjects for taxation as may be just and proper,' did not.
authorize the passage of an ordinance separating from the business
of selling merchandise the incident of furnishing trading stamps
for the purpose of increasing the sale of merchandise and classify-·
ing the furnishing of such stamps as a separate business subject to
taxation.   (3) That, whether the furnishing of the trading stamps.
be treated as a gift or as a part of the contract of sale of the mer-
chandise which is delivered at the time the stamps are furnished,
the furnishing of the stamps does not constitute a business subject·
to be taxed under charter authority to classify and tax business.
(4) That the word 'business' in a commercial or legal sense means·

something done or carried on for a livelihood, profit, or the like." If the City of Atlanta, which not only "has," to quote the language of Mr. Justice Cobb in the opinion in that case, "authority under its charter to impose a tax upon any person carrying on 'any trade, business, calling, or avocation, or profession' within the city," but "has also power 'to classify business and arrange the various business, trades, and professions carried on in said city, into such classes of subjects for taxation as may be just and proper,'" could not, for the purpose of taxation, make a separate business of a mere incident to the business of a retail merchant, it necessarily follows that the City of Lawrenceville can not, under the power granted in its charter, make a separate business of the mere delivery by a common carrier of a particular class of goods and levy a license tax thereon. Under the view we take of the case it is unnecessary to discuss the question as to the power of the municipality of Lawrenceville to make a reasonable and proper classification of the business of common carriers for the purpose of taxation. The ordinance of the City of Lawrenceville involved in this case is void, as the municipality had no power, under its charter, to enact it. Having reached this conclusion, for the reasons above given, it is unnecessary for us to determine whether the ordinance is, as contended by the defendant in error, violative of the interstate-commerce clause of the constitution of the United States.

The express company, however, contends that even if the municipal ordinance in question be invalid, it can elect to obey it, and refuse to accept, at its office in the City of Atlanta, shipments of intoxicating liquors consigned to the owners thereof at Lawrenceville. As was said by Mr. Justice Little, in *Southern Express Company* v. *State,* 107 *Ga.* 670, 672, "The plaintiff in error is a common carrier, and as such is bound to receive and transport articles and property offered it for shipment under reasonable rules and regulations. In the case of *Fears* v. *State,* 102 *Ga.* 274, this court held that notwithstanding the local option liquor law was in force in a particular county, a right of property in spirituous and malt liquors existed in that county. Being property, it was, under existing law, the duty of a common carrier to receive and transport it for a reasonable hire, according to the direction of the owner or sender of the same, unless such transportation has been prohibited by the lawmaking power. . . The lawmaking power of this State has not yet seen

38

proper to declare the transportation of liquors by common carriers illegal; and inasmuch as rights are vested in liquors, just as they are in any other property, it is, in the absence of such a statute as we have indicated, the public duty of the carrier to receive and transport liquors." Such being the public duty of the carrier, it can not lawfully decline to discharge it, by electing to obey an invalid municipal ordinance, instead of the valid and peremptory law of the State which imposes upon it such public duty. It can not escape the force of the living law of the land by taking refuge behind a lifeless municipal ordinance.

The court below did not err in granting the mandamus absolute, and the judgment complained of is

*Affirmed. All the Justices concur.*

COBB, P. J. I concur in the judgment, but can not agree to all of the reasoning of the Chief Justice. I do not think that the ordinance in question seeks to tax merely the act of delivering articles mentioned in the ordinance. It seems to me that a proper construction of the ordinance is that an occupation tax is levied upon persons engaged in the business of carriers, who in that capacity transport into the City of Lawrenceville and there deliver articles of the character mentioned in the ordinance. It is true that the ordinance declares it to be unlawful "to deliver or cause to be delivered" the articles of the character mentioned; but I do not think that the word "deliver" there is to be construed in its limited sense, the mere final act of transportation, but the ordinance construed as a whole is an effort to impose an occupation tax upon all persons engaged in the business of transporting intoxicating liquors into the City of Lawrenceville.

I fully concur with what has been said by the Chief Justice as to the ordinance not being justified under the police power. The ordinance not being authorized under the police power, it is therefore to be determined whether it can be justified under the taxing power. The charter of the City of Lawrenceville in broad terms authorizes the imposition of an occupation tax upon persons engaged in business in that city. The authority to impose an occupation tax carries with it the authority to classify the occupations for taxation. *City Council of Augusta* v. *Clark*, 124 *Ga.* 254. In exercising the power of classification the city authorities must, however, be reasonable, and an arbitrary or unreasonable classification will not be per-

mitted, and the courts will declare invalid a tax upon a given class when the classification is palpably arbitrary and unreasonable. The ordinance in question deals with the occupation of carriers. It has been held that a municipal corporation, under a general power to levy occupation taxes, can not impose an occupation tax upon what is known as a commercial railroad, as distinguished from a street railroad. *City Council of Augusta* v. *Central Railroad,* 78 *Ga.* 119. I do not think that this decision is sound, but of course it must be respected as the law until it is overruled. I see no reason why a municipal corporation, under a general power to levy occupation taxes, can not levy an occupation tax upon commercial railroad companies engaged in the business of common carriers in the city, just as they levy an occupation tax upon telegraph, telephone, and similar companies. The City of Lawrenceville undoubtedly has power to impose an occupation tax upon carriers, subject only to the restrictions imposed by the decision above referred to. They therefore have the right to classify carriers for the purpose of taxation. They may place common carriers in a class to themselves, and carriers other than common carriers in another class, and possibly might make a further subdivision of the general business of carriers. When they are dealing with the subject of common carriers, it certainly would not be unreasonable to place common carriers of goods, common carriers of passengers, and common carriers of live stock in different classes. There would be nothing unreasonable or arbitrary about such a classification, because it is a classification that not only the law but the commercial world recognizes as just and reasonable. But if it put into one class common carriers of goods, how much further can the classification extend? Can they divide this class into subordinate classes of carriers of liquors, carriers of dry goods, carriers of hardware, etc., etc.? If so, in any city where a common carrier is engaged in business a separate tax upon such a carrier for every character of goods known to the commercial world could be imposed, and a tax, although small and insignificant in amount, on each class of goods would in many places amount to a confiscation of the entire earnings of the carrier derived from the business going to that place. I do not think that a classification further than into the three great classes known to the law and the commercial world would be reasonable and proper, and to allow the classification to extend

further would be placing into the hands of a municipal corporation a power that it can not be presumed that the General Assembly ever intended should pass to the subordinate public corporations of the State under a general power to impose a tax upon occupations. The ordinance in question imposes a tax upon carriers of liquors and makes this a business. A person engaged in the business of carrying liquors into the City of Lawrenceville and in no other business could be compelled to pay the tax. But applied to a common carrier who is not only engaged in carrying all the legitimate articles of commerce, but is compelled by law to receive for shipment all of such articles, an ordinance requiring that a common carrier should pay a tax for the privilege of carrying this one class of the articles transported by it, and a very small class compared to the entire business of the company, is unreasonable and arbitrary, and should be declared void for want of power in the city to enact the ordinance providing for it, in so far as it attempts to levy a tax upon common carriers of goods.

CANDLER, J. In my opinion, it is immaterial whether the ordinance in question is valid or not. The Southern Express Company is a common carrier, and, regardless of the ordinance of the City of Lawrenceville, it must accept the liquor, carry it to its destination, and deliver it to the consignee. This being expressly held by the opinion of the Chief Justice, I think that it will be proper to deal with the validity of the ordinance in question only when it is properly brought in question by the party who, under its provisions, is required to pay the license fee.