BASS *v.* GEORGIA PUBLIC-SERVICE COMMISSION *et al.*

No. 13629.  MAY 14, 1941.

*Carlisle Cobb* and *Stephen C. Upson,* for plaintiff in error.

*Marshall L. Allison; Howell & Post, Edward S. White, G. C. Grant, Linton S. Johnson, Erwin & Nix, Gambrell & White,* and *Martin, Martin & Snow,* contra.

REID, Chief Justice. By its enactment of 1931 (Ga. Laws 1931, p. 199), and amendments thereto, the General Assembly has provided a comprehensive scheme of supervision and regulation of motor-transport traffic for hire over the highways of the State. In so far as it relates to motor-transport common carriers the provisions are found in chapter 68-6 of the Annotated Code. The law itself contains many regulations in respect to the hauling for hire, by motor-truck or bus, either passengers or freight; and in addition to this it vests in the Public-Service Commission power to make and in specified instances to enforce rules and regulations in respect to such traffic on the highways. The Code vests generally in the Public-Service Commission the powers of supervision and regulation here referred to. § 68-603. It specifically authorizes the promulgation of such regulations. Code, § 68-629. It provides that "No motor common carrier shall, except as hereinafter provided, operate without first obtaining from the commission, after hearing under the provisions of this chapter, a certificate of public convenience and necessity, pursuant to findings to the effect that the public interest requires such operation." § 68-604. It provides that the certificates referred to in the section just above quoted, may be issued with restrictions and for only a partial exercise of the privilege sought and that the commission "may attach to the exercise of the rights granted by such certificate such terms and conditions as in its judgment the public interest may require." § 68-605. It provides in reference to motor common carriers that no holder of a certificate of public convenience and necessity issued by the commission shall acquire any vested right to use the public roads or any perpetual franchise. § 68-631. It provides that "Any motor common carrier who shall operate on the highways of this State without the required certificate of public convenience and necessity, or after such certificate shall have been canceled, or without having registered his vehicle or vehicles as provided for in this chapter, or otherwise than is permitted by the terms of said certificate and/or the laws of this State, may be enjoined by the courts from operating on the highways of this State, at the suit of the commission, or at the suit of a motor carrier or rail carrier which competes with it, or any individual." § 68-632. The instant case arises under the provisions of this section. The commission filed its petition to enjoin Bass from engaging in the busi-

ness of transporting persons by bus for hire on "charter trips" originating in the City of Athens, on the ground that he held no certificate which would authorize such operation. Other bus operators having certificates for operation out of Athens intervened as parties plaintiff. Bass demurred on the ground that the commission was not authorized to proceed by injunction, since he was the holder of a certificate. The demurrer was overruled. In his answer he not only denied violation of the regulations and statutes, but by way of cross-action sought to enjoin the commission from enforcing a restriction in a certificate held by him, which will be mentioned later. A demurrer by the plaintiff to the cross-action was sustained. Thereafter the defendant offered an amendment to his answer, alleging that the restriction imposed by the commission in his certificate was not contained in those held by other operators out of Athens, and therefore that the same was a discrimination and invalid. This amendment was disallowed. Exceptions to all these adverse rulings were preserved. Following the grant of an interlocutory injunction on the petition of the commission the case proceeded to a final verdict and decree in favor of the commission.

The case which finally developed was substantially as follows: Bass, under a certificate issued to him in February, 1937, had qualified as an intrastate motor common carrier to transport passengers, baggage and light express, and mail on a fixed route over the highways between Toccoa and Augusta. By similar qualification and certificate for the same purpose he obtained a franchise to operate on a route between Toccoa and Cleveland. At one time he had held a similar franchise on a fixed route which included Athens as one of its points of operation. This franchise, with the approval of the commission, had been transferred by him to others. He did, however, hold a certificate from the commission for a limited operation between Winterville and Athens. This certificate contained the following limitation: "Provided, that paragraph seven of the commission's general order of April 27, 1932, shall not apply to the operation of the certificate herein granted, and said applicant shall not be authorized to contract for or perform any charter-trip service whatever." The order referred to in the foregoing restriction was one passed by the commission on the date mentioned, which provided generally "that certificated bus operators on fixed

routes are entitled to contract for any charter trips at terminal or intermediate points on their respective routes, regardless of their destination," as well as other provisions not altogether material here. Also material to the controversy between the parties and to the decision here to be made was a rule or regulation which had been promulgated by the commission, shown in the record to be rule 25(c), as follows: "All vehicles leased by a motor carrier must have the name of the lessee visibly and legibly printed on the side before placed into use by the lessee. Such vehicles must be registered with the commission and GPSC tags issued in the name of the lessee, and insurance coverage filed in the name of the lessee. The vehicles may be driven or operated only by employees of the lessee. Copy of the lease agreement must be filed with the commission before the vehicle is placed in use. Such lease agreement must also cover a specified length of time and show the rental paid for the use of the equipment." Bass admitted making the "charter trips" referred to in plaintiffs' petition and about which testimony was given on the trial; but he contended they were made by him, not in his own right under any certificate held by him, but that the trips were made by him under an arrangement which he had with the Neel Gap Bus Line. In this respect his claim was that certain student organizations of the University of Georgia made contracts with Neel Gap Bus Line to transport them on various special bus trips out of Athens, and that this bus line temporarily leased the defendant's equipment and authorized him under a contract to make the trip for them. He admitted, however, that he had not complied with the provisions of rule 25(c) in reference to filing with the commission the contract in question, and in reference to insurance coverage, and in reference to having placed on the bus the name of the carrier for whose account the trip was made; and that none of the certificates held by him, and referred to above, would in terms have authorized him to make such "charter trips." It appeared that after the present proceeding was commenced Bass filed with the commission his contract with the Neel Gap Bus Line. There were other contentions and facts developed in connection with the controversy; but as to the essential question in the case, what has been stated is, we think, sufficient to determine the correctness of the rulings which are challenged. The contention is made that there were issues of fact to be passed on by the jury,

and that the judge should not have directed a verdict in favor of the plaintiff; and that the restrictive provisions here mentioned were invalid as a matter of law, and deprived him of a vested right.

The demurrer to the petition was properly overruled. While the defendant under the allegations of the amended petition was the holder of certain certificates from the commission, the Code, § 68-632, under which the case was proceeding, authorizes such an action to be maintained against "Any motor common carrier who shall operate on the highways of this State without the required certificate of public convenience and necessity, . . or otherwise than is permitted by the terms of said certificate and/or laws of this State." So it seems clear that the mere fact that the defendant was a certificate-holder would afford him no protection. The question is, did he have the "required certificate," that is one under the terms of which his particular operation was authorized. Obviously, if the operation complained of was in violation of the restrictions contained in his certificates or beyond the authority given in them, this section of the Code was intended to apply; and so the petition charged.

Due to the admitted violation of the restriction in the certificate which authorized operation on the route between Athens and Winterville, but forbade "charter trips" of the character made, and the non-conformity to rule 25(c) as to trips made under contract with the holder of another franchise, we think the verdict was properly directed. The contention that the placing of this limitation in his certificate deprived the defendant of a vested right can not be accepted, in view of the plain terms of the Code, §§ 68-605, 68-631. "Regulation and supervision of motor contract carriers and motor common carriers on the highways of the State is vested in the Georgia Public-Service Commission under the motor-carrier act of 1931 (Ga. L. 1931, p. 199 et seq.), and in the exercise of its supervisory and regulatory powers the commission is vested with a discretion in the promulgation of its orders. In *Hudspeth* v. *Hall,* 113 *Ga.* 4 (38 S. E. 358, 84 Am. St. R. 201), this court said: 'The law is well settled that where public officials "are acting within the scope of their duties and exercising a discretionary power, the courts are not warranted in interfering, unless fraud or corruption is shown, or the power or discretion is being manifestly abused to the oppression of the citizen."'" *Coleman* v. *Drake,* 183 *Ga.* 682,

685 (188 S. E. 897). Aside from the proposition that Bass's complaint as to alleged discrimination by placing the restriction in his certificate should have been addressed to the commission as the regulatory body, there is no sufficient attack on it as being arbitrarily and capriciously entered to make any issue. "The courts should not interfere with a valid order of the Public-Service Commission unless it be clearly shown that the order is unreasonable, arbitrary, or confiscatory. The courts have no power to substitute their judgment for that of the commission." *Georgia Public-Service Commission* v. *Georgia Power Co.*, 182 *Ga.* 706, 715 (186 S. E. 839). See *Maner* v. *Dykes*, 55 *Ga. App.* 436 (190 S. E. 189). This means also that the defendant's amendment to his answer was properly disallowed.

It is argued in the briefs that the defendant, should not have been enjoined, because the violations complained of had already occurred; and attention is called to the fact that upon the trial it developed that the contract with the Neel Gap Bus Line under which the defendant claimed to be operating was, after the commencement of the present action, properly filed with the commission, and therefore that future operations of a similar nature would be lawful. Although the mere filing of the contract does not constitute full compliance with all of the provisions of the rule in question, it seems sufficient answer to this contention to say that even at the trial of the case the defendant was still contending for the right under the certificate held by him to go forward with the same kind of transportation. The injunction was properly decreed.

*Judgment affirmed. All the Justices concur.*