## 18528. BECK & GREGG HARDWARE COMPANY
### *v.* COOK *et al.*

609

Argued March 9, 1954—Decided April 12, 1954—
Rehearing denied May 13, 1954.

610

*Smith, Kilpatrick, Cody, Rogers & McClatchey,* for plaintiff in error.

*Poole, Pearce & Hall, Edwin M. Pearce, Haas, Holland, & Blackshear, Allan Watkins, Paul M. Daniel, R. J. Reynolds, Jr., Bates Block, Moise, Post & Gardner, Alexander E. Wilson, Jr., Robert T. Thompson, Wilson, Branch & Smith,* contra.

DUCKWORTH, Chief Justice. The power to regulate interstate commerce is vested in the Congress by art. I, sec. VIII, par. III of the Constitution of the United States. Code § 1-125 (3). The historical background of this clause of the Constitution attests to the wisdom of thus giving the general Government supreme authority in this field. Pursuant to the foregoing clause of the Constitution, the Congress has enacted the Interstate Commerce Act, and by part II thereof, (49 U. S. C. A., § 301, etc.), motor common carriers engaged in moving freight in interstate commerce are placed under the jurisdiction of the Interstate Commerce Commission, which is empowered by that act to regulate the operations of such carriers. But by section 316 (j) (49 U. S. C. A. § 316 (j)) of the act, it is provided that "nothing in this section shall be held to extinguish any remedy or right of action not inconsistent herewith," and, in section 22 of the original act (49 U. S. C. A., § 22), it is also provided that "nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute but the provisions of this chapter are in addition to such remedies." Thus the Congress plainly and unmistakably expresses its will and intention that rights of parties arising in interstate-commerce transactions may be protected by the courts of the land, both Federal and State, so long as actions in the courts are not in-

consistent with the provisions of the act. The act defines a common carrier by motor vehicle as one holding itself out to the general public to engage in transportation by motor vehicle in interstate and foreign commerce of passengers or property for compensation. 49 U. S. C. A., § 303 (14). Our own Code, § 18-301, imposes upon a common carrier the duty "to receive all goods offered that he is able and accustomed to carry, upon compliance with such reasonable regulations as he may adopt for his own safety and the benefit of the public." To the same effect see *Southern Exp. Co.* v. *R. M. Rose Co.*, 124 *Ga.* 581 (53 S. E. 185, 5 L. R. A. (NS) 619). Thus the alleged failure of the named motor common carriers to give service to the petitioner shows a failure to perform a duty required by law, and this suit in equity in the State court is brought to compel performance of that duty. Does the court have jurisdiction to grant the relief sought?

It is contended by counsel for the defendant carriers that the complaint falls squarely within the exclusive jurisdiction of the Interstate Commerce Commission or the Georgia Public Service Commission, since the petition prays that the carriers be enjoined from discriminating against the petitioner. Were this a case involving only a question of discrimination in the promulgation of a rule of practice, it would seem that, under the decisions of the Supreme Court of the United States, the petitioner would be required to first appeal to the Interstate Commerce Commission or to the Georgia Public Service Commission and obtain a determination by those commissions of whether or not discrimination under the facts involved does actually exist. See Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426 (27 Sup. Ct. 350, 51 L. ed. 553); Baltimore & Ohio R. Co. v. Pitcairn Coal Co., 215 U. S. 481 (30 Sup. Ct. 164, 54 L. ed. 292); Robinson v. Baltimore & Ohio R. Co., 222 U. S. 506 (32 Sup. Ct. 114, 56 L. ed. 288); Mitchell Coal &c. Co. v. Pennsylvania R. Co., 230 U. S. 247 (33 Sup. Ct. 916, 57 L. ed. 1472); Morrisdale Coal Co. v. Pennsylvania R. Co., 230 U. S. 304 (33 Sup. Ct. 938, 57 L. ed. 1494); Pennsylvania R. Co. v. Puritan Coal Mining Co., 237 U. S. 121, 128 (35 Sup. Ct. 484, 59 L. ed. 867); Pennsylvania R. Co. v. Clark Bros. Coal Mining Co., 238 U. S. 456 (35 Sup. Ct. 896, 59 L. ed. 1406); Northern Pacific

Ry. Co. *v.* Solum, 247 U. S. 477 (38 Sup. Ct. 550, 62 L. ed. 1221). But from what has been said above and after a careful examination of the above-cited cases, it appears that the Interstate Commerce Act preserves the existing rights and does not supersede the jurisdiction of the State courts where the case does not involve a determination of matters calling for the exercise of administrative power and discretion by the commission or relate to a subject over which the Federal courts have been given exclusive jurisdiction. Louisville & Nashville R. *v.* Cook Brewing Co., 223 U. S. 70 (32 Sup. Ct. 189, 56 L. ed. 355); Pennsylvania R. Co. *v.* Puritan Coal Co., 237 U. S. 121, 131, supra. Certainly the State commission's powers do not exclude appeals to the courts in cases like this. See Code Ch. 68-6 (Ga. L. 1931, p. 199). The contention of counsel is, therefore, unsound, in that this petition prays that the defendant carriers be enjoined from refusing to perform the duty laid upon them by law, and the petitioner is not seeking to enjoin the continuance of any tariff or to enjoin a rule of practice approved by the commissions because it is discriminatory and unjust.

While a tariff exists, filed by the defendant carriers with both the Interstate Commerce Commission and the Georgia Public Service Commission, a portion of which reads as follows, "where strikes, picketing, riots, or other labor disturbances, or where conditions of streets, roadways, alleys, yards or the exterior or interior of premises make it impracticable, unsafe or impossible to render pick-up and/or delivery service, such service will not be given," which the defendant carriers claim relieves them from delivering or picking up freight at this picketed store—the stipulation of facts shows that such picketing has been orderly and that no violence, threats of violence or other form of intimidation has been employed since the commencement of the strike. And there was no evidence before the court at the interlocutory hearing showing it to be impracticable, unsafe, or impossible for the carriers to render pick-up and/or delivery service. The tariff of these carriers is not under attack, but the issue merely involves a question of law as to whether or not they could stop service to this shipper since the evidence demanded a finding that it was practicable, safe, and possible for them to enter the premises of the petitioner.

It is further contended by counsel for the defendants that the petitioner is seeking a mandatory injunction, which under the law cannot be granted. In *Merchants' & Miners' Transp. Co.* v. *Granger & Lewis,* 132 *Ga.* 167 (63 S. E. 700), this court was reviewing an injunctive order similar in character to that sought in the present case, and at page 172 it was said: "The court's order requires the defendant to cease its discriminatory conduct, though compliance therewith may cause the carrier to accord to the plaintiffs their legal rights in the acceptance and carriage of their lumber in the order of its tender. While under the Code (§ 4922 [now Code § 55-110]) an injunction will not issue to compel a person to perform an act, yet the court may grant an order the essential feature of which is to restrain, although in yielding obedience to the restraint the defendant may incidentally be compelled to perform some act. *Goodrich* v. *Ga. R. R. & Bkg. Co.,* 115 *Ga.* 340 (41 S. E. 659)." See also *Ocean S. S. Co. of Savannah* v. *Savannah &c. Supply Co.,* 131 *Ga.* 831 (63 S. E. 577, 20 L. R. A. (NS) 867, 127 Am. St. R. 265, 15 Ann. Cas. 1044); *Westbrook* v. *Comer,* 197 *Ga.* 433 (6), 443 (29 S. E. 2d 574); and *Rinzler* v. *Folsom,* 209 *Ga.* 549, 553 (74 S. E. 2d 661), and cases cited therein. To enjoin these carriers from discriminating between the petitioner and other shippers, from using the public highways, roads, and streets until the normal and customarily furnished services by them to this petitioner are restored, is not mandatory even though the normal resumption of service to the petitioner will require them to deliver and pick up the petitioner's freight. "Any motor common carrier who shall operate on the highways of this State . . . otherwise than is permitted by . . . the laws of this State, may be enjoined by the courts from operating on the highways of this State, at the suit of . . . any individual." Code § 68-632. The operation of such carriers over the highways of this State is not an absolute vested right or perpetual franchise over our public roads (Code § 68-631; *Bass* v. *Georgia Public Service Commission,* 192 *Ga.* 106, 110, 14 S. E. 2d 740); and while the laws with reference to routes, registration, indemnity insurance, and other regulatory requirements must be met (Code § 68-633), the right of injunction will also apply to a violation of the general laws regarding the duties assumed by the carriers,

such as in this case; and such a violation makes a case requiring them to cease and desist from the use of our highways in the carrying on of such private business as a carrier for hire unless they obey the laws of this State prescribing their duties.

In addition, counsel for the defendant individuals, as representatives of a class as members of a labor union, contend that the relief sought is in conflict with and in violation of the Labor Management Relations Act of 1947 as amended, and, if granted will compel the carriers to interfere with, restrain, and coerce their employees in the exercise of rights guaranteed to them thereunder. We deem it sufficient to state that no labor question is here involved, and while these carriers have voluntarily entered into a contract with their employees whereby they are not required to cross the union's picket lines, we think it sufficient to point out that they cannot escape their responsibility to the public of performing the duties assumed by them as common carriers by any such contract with their employees. For the responsibility of common carriers in this situation, see *Haas* v. *Kansas City &c. R. Co.*, 81 *Ga.* 792 (7 S. E. 629); *Central R. & Bkg. Co.* v. *Georgia Fruit Exchange*, 91 *Ga.* 389 (17 S. E. 904).

It follows that, the lower court having jurisdiction under the laws of Georgia to grant the relief prayed for in the petition, and the admitted facts showing a plain case of discrimination by the refusal of the carriers to give the services required of them by law without just cause, the grant of the temporary injunction was demanded, and the court erred in denying the same as to the defendant carriers.

However, the stipulation of facts fails to prove positively the existence of a conspiracy between the union and the carriers or coercion by the union members of the carriers, their agents, officers, or employees into refusing service to this shipper; and the denial by the defendant individuals in their sworn answer, admitted in evidence, as opposed to the sworn petition, also in evidence, results in a conflict, and the court did not abuse its discretion in failing to enjoin the union members as prayed.

*Judgment affirmed in part and reversed in part. All the Justices concur.*